IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 20, 2007 Session

**HARRIET CACI (O'SHIELDS) ROGERS**
**v.**
**SCOTT ALLEN ROGERS**

An Appeal from the Circuit Court for Shelby County
No. CT-001385-05    D'Army Bailey, Judge

No. W2006-00858-COA-R3-CV - Filed July 3, 2007

This is a parental relocation case. After the parties separated, the mother and the child moved in with the mother's parents in Memphis, Tennessee. Under the parties' marital dissolution agreement ("MDA"), the mother was designated the primary residential parent for the parties' child, and the father was granted parenting time every other weekend. Two months after entry of the divorce decree incorporating the MDA, the mother sent the father a letter notifying him of her intent to move to South Carolina with the child. The mother explained that her parents were moving to South Carolina and she wanted to move with them. The father filed a petition in opposition to the mother's proposed relocation, arguing that the move had no reasonable purpose. After a bench trial, the trial court determined that the mother did not have a reasonable purpose for the move and denied her request to relocate. The mother now appeals. We affirm the trial court's finding that the proposed relocation did not have a reasonable purpose but remand the case to the trial court for a best interest determination as required pursuant to Tennessee Code Annotated § 36-6-108(e).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is**
**Affirmed and Remanded for Further Proceedings**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined, and W. FRANK CRAWFORD, P.J., W.S., did not participate.

Steven G. Roberts, Memphis, Tennessee, for the appellant, Harriet Caci (O'Shields) Rogers.

Jason A. Creech, Memphis, Tennessee, for the appellee, Scott Allen Rogers.

**OPINION**

Petitioner/Appellant Harriet Caci (O'Shields) Rogers ("Mother") and Respondent/Appellee Scott Allen Rogers ("Father") were married in June 2000. One child was born during the marriage,

Abbigail Grace Rogers ("Abbi"), born June 13, 2001. Before their separation, the parties lived with the child in Memphis, Tennessee.

The parties separated in February 2005. Father remained in the marital home, and Mother moved with the child to Mother's parents' home about five minutes away. On March 11, 2005, Mother filed a petition for divorce. The parties entered into a marital dissolution agreement ("MDA") and a permanent parenting plan in July 2005 which designated Mother as the primary residential parent and gave Father parenting time every other weekend. The trial court approved the permanent parenting plan, and it was incorporated into the final decree of divorce, entered on August 17, 2005.

About two months later, on approximately October 22, 2005, Father received an undated letter from Mother stating her intent to relocate to South Carolina with Abbi. In the letter, Mother told Father that her parents wanted to move to South Carolina. Once her parents moved, Mother said, she would no longer have any relatives in the Memphis area, and so she wanted to move to South Carolina as well. Mother said she planned "to further [her] education and work in that area." She told Father that the move was not intended to deny him access to Abbi or to avoid a continuation of his relationship with her, but that she felt it was in the best interest of both her and Abbi to move to South Carolina.

On October 28, 2005, Father filed a petition in opposition to Mother's proposed relocation and for immediate injunctive relief and a change of custody. Father argued that Mother's proposed move did not have a reasonable purpose because it was not based on a better job opportunity, greater salary, or other career advancement. He alleged that, while negotiating the permanent parenting plan, Mother had "promised Father 'on the Bible' that she would not move from Memphis with the minor child." On February 1, 2006, Mother filed a response to Father's petition, denying that she promised not to move from Memphis. Mother asserted that Father did not exercise his parenting time regularly until after he received her letter notifying him of her intended move.

On March 9, 2006, the trial court held a hearing on Father's petition opposing Mother's relocation. At the outset, the trial court stated that "the most logical way" to conduct the hearing was to hear Mother's proof first:

> The Court: Well, I suppose that the most logical way for me to hear the proof in this matter would be to hear the mother's proof first, even though you could interpret the statute as putting the burden on the opponent of the relocation. But in terms of really my evaluating the statutory elements that I have to consider, it just makes more sense for me to hear the mother's presentation rather than have the opposition heard first.

The parties did not object to this order of proof. Father's attorney informed the trial judge that the parties had agreed to narrow the issue in the hearing to whether Mother's proposed relocation had

a reasonable purpose, adding that Father did not intend to assert that the move was for a vindictive purpose.

Mother was first to testify. She stated that she was born in Spartanburg, South Carolina, and that she is an only child. She and her parents later moved to Atlanta, Georgia. Many of Mother's family members continued to live in Spartanburg, such as her grandfather, step-grandmother, aunts, uncles, and cousins. While Mother and her parents lived in Atlanta, they visited Spartanburg often, especially on holidays. During Mother's college years, her family moved to Memphis, and after that, she visited Spartanburg about twice a year.

Mother has an undergraduate degree in sociology and has earned some hours toward a teaching degree. Since the parties separated, she and Abbi had continued to live with Mother's parents in Memphis. In October 2005, when she sent Father the relocation notice, Mother was employed part-time for Roadway Express, the company at which her father had been employed, earning about $25,000 per year. While Mother worked, Abbi went to a mother's-day-out program two days per week, and she stayed with her maternal grandmother two days per week. At times, Abbi had stayed with her paternal grandparents one day a week, but Mother testified that Abbi had not been to their home since July 2005. In November 2005, about a month after she sent the relocation notice to Father, Mother's job position with Roadway Express was eliminated. In view of her proposed relocation, Mother did not attempt to get another job, but instead collected unemployment.

Mother conceded that she and Father had discussed the possibility of her relocating before they signed the permanent parenting plan. Mother said that, during their marriage, Father was not active in Abbi's life, and she maintained that she told Father she would not move if he would become a more involved parent. Mother described Father's relationship with Abbi before and after she informed him that she wanted to move to Spartanburg. Prior to receiving Mother's intent to relocate, Mother stated, Father's visitation was sporadic, and he rarely called Abbi. She said that Father occasionally stopped by to see Abbi or walk up the street with her and go to the park. After Father received the October 2005 relocation notice, Mother said, Father called Abbi so often that Mother began limiting Father to only two calls a week. Mother said that Father helped coach Abbi's soccer team. Father also coached a boys' basketball team at the church, Mother said, and Father took Abbi with him to the basketball team's events. Mother admitted that she swore "on the Bible" to Father that she would not move, and that she sent her relocation letter two months after the agreed parenting plan was approved.

Mother stated that her parents planned to move to Spartanburg, and that many of her family members still live in Spartanburg, including relatives near Abbi's age. Mother explained, "My parents were – are planning on moving there. My dad had just retired, and I wanted to go also. I have no family here, and they are my support system. I would like to be able to go over there." Mother said that her father had always intended to retire in Spartanburg. At the time of the hearing, Mother's parents had not purchased a home in South Carolina, and their Memphis home had not been put on the market because they were awaiting the outcome of the court proceedings.

Mother testified that she wanted to earn her teaching certificate, and said that she had been accepted at the University of South Carolina Upstate in Spartanburg. Mother explained that she wanted a job with the Spartanburg school system because her work hours would coincide with Abbi's school hours, and that she did not want traditional full-time employment. At the time she sent her relocation notice to Father, Mother did not have a job in Spartanburg. Mother later met with Gregory L. Cantrell ("Cantrell"), an assistant superintendent of the school system in Spartanburg. Cantrell told Mother that he would be able to give her a job with the Spartanburg school system, depending on what was available when she moved. At the time Mother met with Cantrell, two positions were available, earning $22,000 and $13,000, respectively, but Mother was not able to move at that time. Cantrell also indicated that, after Mother had her teaching certificate, he would hire her as a teacher if a position were available. Mother admitted that she could obtain a teaching certificate and comparable employment in Memphis, and that her primary reason for wanting to relocate was to be with her family. She conceded that Abbi had several paternal relatives in Memphis, including grandparents, an aunt, an uncle, and cousins. Mother said that, although Abbi had a good relationship with those cousins, she would not characterize it as a "close" relationship. Mother said she wanted Abbi to have a close relationship with her side of the family. She acknowledged that, if she stayed in Memphis and her parents moved, her retired parents would be able to visit Memphis at any time and stay for a month at a time if they chose to, while visiting Abbi in South Carolina would be a substantial burden upon Father. If she were permitted to move to South Carolina with Abbi, Mother stated, she would be willing to make arrangements with Father for him to see the child, such as meeting him halfway and other such accommodations.

Mother also entered into evidence the deposition of Gregory Cantrell, the Assistant Superintendent of the Spartanburg school system. Cantrell testified that he met with Mother on February 7, 2006, to discuss Mother's potential relocation to Spartanburg and her aspirations to earn a teaching certificate and possibly teach. Cantrell told Mother that, if she were to move to Spartanburg, he would place her in a position in the school system that was available at the time of her move, adding that the school system "always [had] a vacancy or two around." Cantrell wrote a letter, which was introduced into evidence, stating that he had offered Mother employment in either an assistant teaching position earning $13,996 per year, or a clerical position earning $22,240 per year, to begin in the fall of 2006. The letter also stated that, upon Mother's receipt of a teaching certificate, Cantrell would be interested in discussing a teaching position with her.

Mother's father, Joseph M. O'Shields ("Grandfather"), testified on Mother's behalf. The parties stipulated that Grandfather had worked for Roadway Express for several years and had retired the year prior to trial. They also stipulated that he and his wife wanted to move back to Spartanburg where his family is located. Grandfather said that Spartanburg had a population of about 65,000, and is about thirty (30) miles from Greenville, South Carolina. Grandfather said that there was a tremendous amount of industry around those two areas. Grandfather agreed that his relocation to Spartanburg was voluntary. He testified that his house was not on the market for sale because he was waiting for the results of Mother's court proceedings.

Shawn Rogers ("Rogers"), Father's brother, testified on behalf of Father. Rogers testified that he and Father were "best friends," and that he had personal knowledge of Father's relationship with Abbi. Rogers said he was married and his two children were ages six and three years old at the time of the hearing. Rogers said that Abbi, who was four years old at the time of the hearing, had been "best friends [with his six-year-old daughter] . . . since Abbi's birth." He claimed that Father exercised his alternating-weekend parenting time after the parties separated, and during Father's parenting time, Abbi would sometimes spend the night with Rogers and his family.

Rogers disagreed with Mother's characterization of Father as an uninterested, uninvolved parent, stating that Father loves "his daughter more than anybody in this world." Rogers described Father as a playful dad: "He's the dad that takes her to the parks, takes her swimming, gives her piggy-back rides, tickles her." In addition to his scheduled parenting time, Rogers said, Father sometimes watched Abbi as a favor to Mother. When Abbi was with Father, Father would call Rogers and get together with him and his children.

Father also testified. He stated that he works as an account representative for Roadway Express earning about $60,000 per year, and that he has twelve days of vacation per year in addition to major holidays. Father testified that Mother did not discuss with him her intent to move to Spartanburg after the permanent parenting plan was signed. He did not anticipate Mother's proposed move "because she promised me on the Bible six or seven times during this entire ordeal that she would never relocate and take my child away from me." Father stated that he opposed moving Abbi to South Carolina because he felt that Abbi needed to be near both of her parents.

At the conclusion of the hearing, the trial court determined that the purpose of Mother's proposed move was not reasonable. The trial court commented that, given the fact that Mother was recently divorced and living with her parents, it was understandable that she would want to move with them to South Carolina. The court also observed that, if Mother were permitted to move with Abbi, she likely would be able to obtain a job through the Spartanburg school system or otherwise, though it was somewhat speculative. The court stated, "[Mother] admits that the educational advancement opportunity is as much here [in Memphis] as it is there [in Spartanburg]." The trial court found, however, that "it's essentially just a family-related move . . . ." The trial court characterized the anticipated relocation of Mother's parents to Spartanburg as speculative as well, and found that the evidence showed that they were not absolutely determined to move because they had not yet put their house on the market. The trial court found it relevant that, at the time Mother and Father executed their parenting plan, they had an understanding that Mother would not move, although the trial judge said that this was not a strong consideration. On March 29, 2006, the trial court entered an order consistent with its oral ruling, and an amended order was later entered stating:

> This Honorable Court specifically finds that Mother has not shown that her proposed relocation to South Carolina has a reasonable purpose pursuant to T.C.A. [§ 36-6-108(d)]. The Court specifically finds that Mother's job opportunities and educational opportunities in South Carolina are the same opportunities that Mother has in

Memphis and the said South Carolina job opportunity is speculative. Therefore, Mother's proposed relocation to South Carolina with the minor child is denied.

From this order, Mother now appeals.

On appeal, Mother argues that the trial court erred in finding that the purpose of proposed relocation was not reasonable. She first contends that the trial court erroneously shifted the burden to her to prove that the proposed move was reasonable, rather than placing the burden on Father to prove that the move did not have a reasonable purpose. She further argues that the facts do not support the trial court's finding that her proposed move was not for a reasonable purpose. Mother also claims that, even if this Court upholds the trial court's finding that Mother's proposed relocation does not have a reasonable purpose, the Court should nevertheless determine that it would be in the child's best interest to permit Mother to relocate to Spartanburg with the child. In response, Father contends that the trial court did not erroneously place the burden of proof on Mother and maintains that, in any event, Mother did not raise this issue in the trial court and so cannot raise it on appeal. He asserts that the evidence supports the trial court's decision not to permit Mother to relocate with Abbi, because the evidence showed that her purpose for relocating was not based upon vocational opportunity and was not otherwise reasonable. Father claims that Mother did not raise the "best interest" issue in the trial court and is precluded from raising it here. In the alternative, he claims that the best interest factors weigh against permitting Mother to relocate with Abbi to South Carolina.

The trial court's findings of fact are reviewed *de novo*, presuming those findings to be correct unless the evidence preponderates otherwise. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005); Tenn. R. App. P. 13(d). The trial court's conclusions of law are reviewed *de novo*, with no such presumption of correctness. *Watson*, 196 S.W.3d at 701; Tenn. R. App. P. 13(d). In applying these standards of review, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody," and the resolution of such matters often hinge on subtle factors, including the parents' demeanor and credibility. *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004) (quoting *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993)). Consequently, appellate courts will not overturn a trial court's decisions on these issues except upon a showing that the trial court abused its discretion. *See id.*

A review of the relevant statutes is necessary to resolve the issues on appeal. In 1998, the Tennessee legislature enacted the parental relocation statute, Tennessee Code Annotated § 36-6-108, which sets out the framework for courts to determine whether to permit the primary residential parent to relocate with the child outside Tennessee or more than 100 miles away inside Tennessee. The statute provides that, when parents spend substantially equal amounts of time with the child, "[n]o presumption in favor of or against the request to relocate with the child shall arise," and the trial court must determine whether permitting the relocation is in the child's best interest. T.C.A. § 36-6-108(c) (2005). In this case, however, it is undisputed that Mother spends the greater amount of time with Abbi. In this situation, the statute has "a legislatively mandated presumption in favor of [the] relocating custodial parent. . . ." *Collins v. Coode*, 2004 WL 904097, at *2 (Tenn. Ct. App.

Apr. 27, 2004). The court is in fact required to permit the primary residential parent to relocate with the child unless the other parent can establish one of the following three grounds:

> (A) The relocation does not have a reasonable purpose;
> (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
> (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

T.C.A. § 36-6-108(d)(1) (2005); *see Kawatra v. Kawatra*, 182 S.W.3d 800, 802-03 (Tenn. 2005). The burden of proving one of the three grounds is on the parent opposing the relocation. *Clark v. Clark*, No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at *3 (Tenn. Ct. App., Dec. 30, 2003). If the parent opposing the relocation is unable to prove one of the three enumerated grounds, the inquiry ends there and the primary residential parent "shall" be permitted to relocate with the child. T.C.A. § 36-6-108(d).

If, however, the trial court finds that the parent opposing relocation has established one of the grounds set forth in § 36-6-108(d)(1), the statute states that the trial court must then continue its analysis:

> (e) If the court finds one (1) or more of the grounds designated in subsection (d), the court *shall* determine whether or not to permit relocation of the child based on the best interest of the child. If the court finds that it is not in the best interest of the child to relocate as defined herein, but the parent with whom the child resides the majority of the time elects to relocate, the court shall make a custody determination and shall consider all relevant factors . . . .

T.C.A. § 36-6-108(e) (2005) (emphasis added). In this case, there was no allegation that relocating the child to South Carolina would cause specific harm or that Mother's motive for relocating was vindictive. The focus of inquiry in this case is on the first ground, whether the proposed relocation does not have a reasonable purpose. According to the plain language of the statute, Father had the burden of proving that Mother's proposed relocation to South Carolina "does not have a reasonable purpose."

On appeal, Mother first argues that the trial court used an incorrect legal standard by erroneously placing the burden on her to prove that the proposed move to South Carolina had a reasonable purpose, rather than placing the burden on Father to prove that the move did not have a reasonable purpose. In support of her argument, Mother notes that the trial court reversed the order of proof, requiring her to put on her proof first. Mother also points out that, at the conclusion of the proof, the trial court stated, "I don't think, gentlemen, that [Mother] has established a reasonable purpose for the move." Finally, Mother cites the language in the trial court's amended final order,

in which the trial court found that "Mother has not shown that her proposed relocation to South Carolina has a reasonable purpose pursuant to TCA § 36-6-108(d)." Consequently, Mother argues, this Court must reverse the trial court's decision because it was based on an erroneous legal standard.

Father claims that Mother has waived this argument because she made no objection to the order of proof or to the trial court's post-trial statements. He notes that, at the conclusion of trial, the trial court stated that "the father has persuaded the Court that under the statute," Mother's proposed relocation did not have a reasonable purpose, indicating that the trial court was holding that Father had sustained his burden of proof.

In this case, the order of proof does not indicate that the burden of proof was placed on Mother; it is a matter within the trial court's discretion. It is undisputed that Mother did not object to the order of proof. Mother rightly notes that the trial court made contradictory comments concerning the burden of proof, at one point stating that Father had "persuaded the Court" and elsewhere stating that Mother had not "established a reasonable purpose for the move." As noted above, the statute clearly states that the parent opposing the move has the burden of proving that the relocation proposed by the primary residential parent "does have a reasonable purpose." T.C.A. § 36-6-108(d)(1). Despite the difficulties of proving a negative, Father clearly had the burden under the statute of proving that Mother's proposed relocation to South Carolina did not have a reasonable purpose.

In some cases, the difference in allocating the burden of proof could be crucial. In this case, however, the purpose of Mother's proposed relocation was essentially undisputed – her parents, now retired, wanted to move to Spartanburg to be near extended family, and Mother wished to move to Spartanburg with Abbi in order to be near her parents for financial and emotional support and assistance in child care. There was no evidence, nor did Mother argue, that she had better educational or vocational opportunities in Spartanburg than in Tennessee. Despite the trial court's unfortunate comments, the analysis is essentially unchanged; the trial court's job is to decide whether Mother's reason for moving was a "reasonable purpose" for relocating. Therefore, we go on to address this issue on appeal.

Mother argues that the evidence preponderates against the trial court's finding that Mother's proposed relocation to South Carolina did not have a reasonable purpose. Mother contends that the issue of "reasonable purpose" does not always revolve solely around financial interest, job opportunities, or career advancement. She acknowledges that the purpose of her proposed relocation is to live with her parents and to be near extended family members who would serve as a support system while she pursues an education and a career. Her planned vocation would ultimately permit her to work during the child's school hours, which would benefit the child. Under these circumstances, Mother maintains, the purpose of her proposed relocation is reasonable under the statute. In response, Father argues that Mother's family-based purpose for relocating is not reasonable under the circumstances. He points out that Mother does not seek relocation in order to pursue an education or a job opportunity. He contends that Mother's letter and her own testimony indicate that she wants to move because, once her parents move to Spartanburg, she would no longer

have any relatives in the Memphis area, and she wants to live with her parents, because she is dependent on them, financially and otherwise. This purpose, Father argues, is not reasonable under Tennessee caselaw interpreting the relocation statute.

In support of her position, Mother cites cases in which the primary residential parent's purpose in relocating was found reasonable, despite the fact that it was based on factors other than job opportunity. For example, in *Caudill v. Foley*, 21 S.W.3d 203 (Tenn. Ct. App. 1999), the mother sought to move with the child from Tennessee to Florida for three reasons: (1) she wanted to live with her new husband who owned a business there, (2) she had an excellent chance of reemployment with a former employer in Florida, and (3) the parties' child had numerous friends and relatives in the Florida area. The appellate court held that "[e]ach of these purported reasons constitutes a reasonable purpose for relocation." *Caudill*, 21 S.W.3d at 212. Based on this and other factors, the appellate court determined that the purpose of the relocation request was reasonable. *Id.*; *see also Clark*, 2003 WL 23094000, at *6-*7 (finding reasonable the purpose of the mother's request to relocate based on her impending marriage to a Virginia resident, when it was impractical for her fiancé to move to Tennessee, and the marriage would allow her to stay at home with her children).

Mother also cites cases indicating that relocating to be near family has been determined to be a reasonable purpose. In *Price v. Bright*, No. E2003-02738-COA-R3-CV, 2005 WL 166955 (Tenn. Ct. App. Jan. 26, 2005), the father, who was the primary residential parent, sought to move to Ohio with the parties' child because he had several relatives there, including his mother, grandmother, and numerous cousins, who would assist him in caring for the child. The father put on proof that the child's mother had not been helpful in caring for the child when problems arose, and that when the mother had custody, the child was often left with the mother's boyfriend while the mother was at work. *Price*, 2005 WL 166955, at *2. The father also put on proof that he had a job offer with greater pay and benefits in Ohio than his job in Tennessee, and that he had been approved for a loan to buy a house in Ohio. The trial court determined that, under these circumstances, the father's purpose for seeking to move to Ohio was reasonable, and the appellate court upheld this decision. *Id.* at *11.

In *Bell v. Bell*, No. E2004-02964-COA-R3-CV, 2005 WL 2860284, at *7 (Tenn. Ct. App. Oct. 31, 2005), the mother sought to move from Chattanooga, Tennessee, back to her hometown of Cincinnati, Ohio, to be near her family. Mother testified that she had secured a job in Cincinnati as a pharmaceutical representative earning more than her job in Chattanooga, but that she lost that job awaiting trial. *Bell*, 2005 WL 2860284, at *2. The trial court held that the mother's purpose for moving was reasonable, and that she should be permitted to move if she could secure a job that was "equally advantageous" as the job she had lost. On appeal, the father argued that the purpose of the mother's proposed move was unreasonable, because a custodial parent's wish to be closer to his or her family without proof of enhanced employment opportunities was not a reasonable purpose for relocation. *Id.* at *6. The appellate court rejected that argument, because the mother had a concrete offer of a job position that resulted in an increased salary and better working conditions than her former job. Therefore, the mother's relocation was deemed to have a reasonable purpose. *Id.* at *6-*7.

Mother argues that both ***Caudill*** and ***Clark*** illustrate that a firm job opportunity in the new area is not required for the purpose of the proposed relocation to be deemed reasonable. Furthermore, as in ***Price*** and ***Bell***, relocating to be near a strong family support system is a reasonable purpose, particularly where, as here, Mother has been accepted as a student at a college in Spartanburg, there is a strong likelihood that she could obtain employment that would coincide with the child's school hours, and she has the potential for a career in teaching. Mother asserts that the fulfillment she would derive out of being with her family in South Carolina benefits Abbi, as "the custodial parent's happiness and well being are crucial to the child's interests because the custodial parent has the responsibility of caring for the child on a daily basis." ***Aaby v. Strange***, 924 S.W.2d 623, 627 (Tenn. 1996) (citing ***Taylor v. Taylor***, 849 S.W.2d 319, 328 (Tenn. 1993)).

In support of his position that the purpose of Mother's proposed relocation is not reasonable, Father cites ***O'Bannon v. O'Bannon***, No. E2002-02553-COA-R3-CV, 2003 WL 22734673 (Tenn. Ct. App. Nov. 20, 2003). In ***O'Bannon***, the mother sought to relocate with the parties' children to South Dakota because she was from South Dakota and her parents lived there. The mother testified that she could find employment in South Dakota "within thirty seconds," and that her new husband's prospects for finding work there would also be excellent. ***O'Bannon***, 2003 WL 22734673, at \*2. The trial court determined that the mother's proposed relocation did not have a reasonable purpose, and that decision was affirmed on appeal. The appellate court stated specifically that "the fact that Wife is originally from . . . South Dakota and that her mother and other relatives live there is [not] sufficient to establish that her intended relocation has a reasonable purpose and justifies moving these children fifteen hundred miles from their father." ***Id.*** The appellate court agreed that the mother's assertion that she and her new husband would easily find jobs in South Dakota was not sufficient, because they were leaving stable employment in Tennessee in the hope of easily obtaining comparable employment in South Dakota. The appellate court stated that the "mere belief and hope that career advancement will occur is not sufficient to establish a reasonable purpose for relocation." ***Id.***

Father also cites ***Dunkin v. Dunkin***, No. M2002-01899-COA-R3-CV, 2003 WL 22238950 (Tenn. Ct. App. Sept. 30, 2003). In that case, the parties had a child with Down's syndrome. The mother sought to move with the child to Montana to be with her mother, who had a brain tumor. ***Dunkin***, 2003 WL 22238950, at \*1. The mother testified that she was the oldest child and the only daughter, and that she could be a tremendous help to her own mother if she could relocate. In addition, the mother claimed that the schools in Montana were better suited to handle the daily needs of the parties' child. The mother also had brothers who lived in Montana, and the mother claimed that it would benefit her child to be around her brothers and their families. She had a job offer in Montana for slightly less compensation than her job in Tennessee. The trial court found that the mother had put on no competent proof about Montana's educational program for the parties' Down's syndrome child, and how the Montana school would benefit the child. ***Id.*** at \*3. Moreover, the mother put on no proof that her mother's condition was terminal, and in fact had little information about her mother's illness. ***Id.*** at \*5. In light of these factors, the trial court determined that the proposed relocation was not for a reasonable purpose, commenting that the mother was free to move and be with her own mother, but that the child would have to remain in Tennessee. ***Id.*** at \*3. The

appellate court affirmed the trial court's decision noting that, "[w]hile this Court has found that an *increase* in salary or an opportunity for *career advancement* can be a factual predicate to constitute a reasonable purpose for relocation, the subject cases are of no help to Mother, who, as previously indicated, is not moving because of a better employment opportunity and/or enhanced earnings." *Id.* at *5 (citations omitted) (emphasis in original).

Father argues that the holdings in *O'Bannon* and *Dunkin* illustrate that relocation for the purpose of being with relatives and hoping for a better career opportunity is not a reasonable purpose for a relocation. He further asserts that Mother's desire to further her education and eventually establish a career as a teacher is not a reasonable purpose to relocate, because only *an increase* in salary or a career advancement, not the mere hope of such an increase or advancement, can serve as a factual predicate to constitute a reasonable purpose.

In this appeal, Father appears to argue that a reasonable purpose for relocation cannot be established in the absence of proof that a move will result in "better employment opportunity and/or enhanced earnings." *See Dunkin*, 2003 WL 22238950, at *5. There is no indication that the term "reasonable purpose" as used in the parental relocation statute is limited to purposes related to the employment or earnings of the primary residential parent. We are mindful that the burden of proof is on Father to show no reasonable purpose for the move. There is no proof in the record that Mother's educational or vocational opportunities in South Carolina are worse than her opportunities in Tennessee, only that they appear to be no better. Therefore, we focus on the proof regarding the family-related reasons for the proposed relocation.

Mother's stated purpose in seeking to relocate with the child to Spartanburg is to live with her parents, who provide her with financial and emotional support and who also help her with Abbi's care. Mother has extended family members in Spartanburg as well, and she desires to live near those relatives, rather than staying in Memphis where, after her parents' move to South Carolina, she will have no familial support.

As this Court has held in the past, the desire of a primary residential parent to move to be near his or her extended family can form the basis for a reasonable purpose, particularly when this reason is augmented by additional considerations. *See, e.g., Price*, 2005 WL 166955, at *11 (extended family in Ohio plus better job offer); *Caudill*, 21 S.W.3d at 212 (new husband resided in Florida, mother had employment opportunity in Florida, and extended family in Florida). In this case, however, effectively the *only* reason for Mother's proposed move was to be near her extended family. Importantly, the trial court found that even this reason was speculative; Grandfather testified that they had not put their home on the market for sale pending resolution of Mother's court proceedings. This implies that, although Mother's parents clearly desired to move to Spartanburg, this decision may hinge on Mother's ability to relocate with Abbi. The reason for Mother's proposed move must be weighed against the considerable limitations on Father's ability to travel to South Carolina to visit Abbi and the presence of Father's extended family in Tennessee. Under these circumstances, we find that the evidence preponderates in favor of the trial court's determination that the purpose of Mother's proposed relocation is not reasonable.

Finally, Mother argues that, even if this Court upholds the trial court's determination that the relocation is unreasonable, the trial court erred in failing to perform a best interest analysis as required under Tennessee Code Annotated § 36-6-108(e), which provides that if one of the grounds for objecting to the move has been established "the court ***shall*** determine whether or not to permit relocation of the child based on the best interest of the child" considering all relevant factors.[1] T.C.A. § 36-6-108(e) (2005) (emphasis added). She argues that, because the trial court failed to make a best interest determination in accordance with this provision, this Court should review the issue *de novo*, making findings of fact as to best interest based on the record provided. She claims that a review of the relevant factors would require a finding by this Court that Abbi's best interest would be served by permitting the relocation.

In response, Father argues that Mother waived this issue by not raising it in the trial court. He cites to the pre-trial comment by Father's counsel to the effect that the parties "have agreed that the narrow focus that we're really both focusing on and have focused in our memorandums [sic] is the reasonable purpose provision. . . . I don't think we're going to be arguing that the move is [vindictive], given the proof . . . ." Father relies on the general rule that issues not raised in the trial court cannot be raised for the first time on appeal. ***See Simpson v. Frontier Cmty. Credit Union***, 810 S.W.2d 147, 153 (Tenn. 1991). In the alternative, Father submits that, even if a best interest determination were made by the appellate court based on the record, an application of the relevant factors would require a finding that the child's best interest would not be served by permitting the proposed relocation.

---

[1] The relevant factors to consider in making a best interest determination under this subsection are as follows:

(1) The extent to which visitation rights have been allowed and exercised;
(2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;
(3) The love, affection and emotional ties existing between the parents and child;
(4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
(6) The stability of the family unit of the parents;
(7) The mental and physical health of the parents;
(8) The home, school and community record of the child;
(9)(A) The reasonable preference of the child if twelve (12) years of age or older;
    (B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
(10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and
(11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

T.C.A. § 36-6-108(e) (2005).

As noted above, under the statutory framework set forth in T.C.A. § 36-6-108, the parent spending a greater amount of time with the child, shall be permitted to relocate with the child unless one of the enumerated grounds for objection is proven. Once one of the enumerated grounds is established, the statute requires the trial court to consider the child's best interest in deciding whether to permit the relocation.

Here, the trial court limited the scope of the hearing to the reasonable purpose issue based on the express agreement of the parties. Indeed, when counsel for Father asked Father's brother, Rogers, whether he had discussed Abbi's best interest with Mother, Mother's counsel objected, stating, "I don't know that the issue is Abbi's best interest at this point. That's not the issue. The issue is whether or not it's a reasonable purpose." The trial court agreed and sustained the objection to the evidence as it related to the child's best interest, but allowed the evidence to the extent that it was relevant to reasonable purpose. At another point, the trial court limited Father's testimony regarding the exercise of his designated parenting time with Abbi. The trial court observed that Father's lack of visitation was not relevant to whether Mother's purpose in relocating was reasonable, but was relevant, however, to the best interest determination.

Certainly some of the evidence presented on reasonable purpose would also bear on the trial court's best interest analysis, such as evidence regarding the child's relationship with Mother's extended family in South Carolina and the limitations on Father's ability to travel to Spartanburg to visit Abbi. Nevertheless, it is clear from the statements of counsel at trial and the specific rulings of the trial court that evidence regarding the child's best interest was not fully explored during the hearing in the trial court below. Evidence on best interest could include evidence on the statutorily enumerated factors, such as the extent to which Mother would be likely to comply with any new visitation arrangement, the character of other persons likely to frequent the maternal grandparents' new Spartanburg home, and evidence on other non-enumerated factors, such as the detrimental effect to Abbi if she were to live apart from her maternal grandparents. In any custody determination, the child's best interest is of paramount concern, and there are literally thousands of factors to consider in the lives of children when making such a determination. *See Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983). Under these circumstances, an agreement to limit the focus of the hearing is not a waiver of the trial court's obligation to consider the child's best interest. Thus, because the trial court limited the evidence and failed to make a best interest determination, we must remand the case to the trial court for an additional evidentiary hearing, if necessary, to make a best interest determination as is required under section 36-6-108(e).

Father has requested an award for the attorney's fees and expenses he incurred in this appeal. In light of our conclusion herein, this request is denied.

The decision of the trial court is affirmed and the case is remanded for further proceedings. Costs on appeal are taxed equally to Appellant Harriet Caci (O'Shields) Rogers and her surety, and Appellee Scott Allen Rogers, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE