IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 29, 2011

## JACQUELINE L. SHULTZ  v. KIRBY FULLER

**Appeal from the Circuit Court for Knox County**
**No. 111227     Wheeler A. Rosenbalm, Judge**

---

**No. E2011-00874-COA-R3-CV-FILED-JANUARY 4, 2012**

---

Upon the divorce of the parties, the permanent parenting plan designated the mother as the primary residential parent of the couple's daughter. Both parties eventually filed petitions to modify the permanent parenting plan. The trial court concluded that there had been a material change of circumstance and that it was in the best interest of the daughter that her parenting be shared equally between the parties. Mother appeals the trial court's modification decision. We reverse the order of the trial court and remand for further proceedings regarding the best interest of the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Russell L. Egli and Keith Wesolowski, Knoxville, Tennessee, for the appellant, Jacqueline L. Shultz Fuller.

Kirby E. Fuller, Powell, Tennessee, pro se appellee.

**OPINION**

**I.  BACKGROUND**

Jacqueline L. Shultz ("Mother") and Kirby Fuller ("Father") were married on April 8, 2000. During the marriage, they became the parents of a daughter ("the Child"), born on May 29, 2003.

Mother filed for divorce in July 2008. Her complaint was accompanied by a temporary parenting plan ("TPP") and a Local Rule 28B verified statement as required by the Fourth Circuit Court for Knox County. Mother asserted in the verified statement that Father was "financially and emotionally unstable" and had "anger issues." In her complaint, Mother sought to be named the primary residential parent of the Child; she requested that Father be provided residential time with the Child as set forth in the TPP. The trial court entered Mother's TPP, awarding her the full care and custody of the Child with the exception of every other weekend visitation by Father.

The final judgment of divorce was entered by the trial court on February 6, 2009, incorporating by reference the parties' marital dissolution agreement, along with the permanent parenting plan ("PPP"). The PPP named Mother the primary residential parent of the Child. Mother was awarded 245 days per year with the Child and Father was provided with 120 days per year co-parenting time.

Not long after the parties' divorce was entered, Mother filed a contempt charge alleging that Father had not complied with the PPP. Father, in turn, filed charges against Mother for allegedly dropping health insurance on his daughter Kayla that she had purportedly agreed to maintain; for making negative comments about him to the Child; for harassment; and for not returning to him items awarded to him in the divorce.

Eventually, on September 16, 2009, Mother filed a petition for modification of the PPP, alleging that a material change of circumstance had occurred since the entry of the final judgment of divorce. She asserted that "it is in the minor child's best interest that she be awarded permanent legal and physical custody of the minor child and that respondent be granted reasonable visitation." In December 2009, Father filed a response that the trial court considered to be an answer to Mother's petition, proclaiming that "the best interest of the minor child is split custody with both parents." Three months later, the trial court entered an order that Father was enjoined from having overnight visitation with the Child until he ceased cohabitation with Jamie Rudd, who eventually became his wife.

In August 2010, Mother filed a verified statement containing certain contentions regarding Father. According to the statement, Father was residing in a three-bedroom mobile home with at least seven other people. The statement indicated that in May 2010, a minor in Father's home had been taken into custody for contributing alcoholic beverages to a minor at Powell Middle School. Mother's statement also provided that on June 8, 2010, the Knox County Sheriff's Department had been dispatched to Father's home for a domestic violence

call.[1] Further indicated was that in May 2010, Mother had received a call from East Knox Elementary School that the Child had written a disturbing message containing sexual content. As a result of this incident, Mother made a formal complaint to the Department of Children Services ("DCS"), who investigated the matter. According to Mother, it was the finding of DCS that the Child "doesn't appear to have been molested [but] she has been exposed to inappropriate amounts of information pertaining to sex and the male [genitalia] area."

On August 26, 2010, the trial court entered a TPP filed with Mother's petition that modified Father's co-parenting time to every other Saturday and Sunday, 10 a.m. until 4 p.m., with no other persons present. Shortly thereafter, Father filed his own petition for modification of the PPP. While he agreed with Mother that there had been a substantial and material change in circumstance since the entry of the original PPP, Father averred "that it is in the minor child[']s best interest that he be awar[d]ed 50/50 custody."

On November 3, 2010, a hearing on the competing petitions was heard with no court reporter present. Although Mother was the initial petitioner, Father was allowed to open proof in his petition for modification of custody first.[2] Father's wife, Jamie ("Wife"), took the stand first and Father, appearing pro se, asked her a number of leading questions on direct. According to Mother, when she objected to the questions as leading, the trial court overruled the objections because "lay persons are granted more leeway in this Court."[3] Wife testified that the family home had been investigated by DCS because of her ex-husband and that both she and Father had undergone drug and alcohol counseling and testing. According

---

[1]The official incident report related as follows: "UPON ARRIVAL OFFICERS SPOKE WITH THE VICTIM WHO STATED THAT SHE AND HER HUSBAND (SUSPECT) HAD BEEN IN A VERBAL ARGUMENT FOR THE LAST TWO HOURS. THE VICTIM STATED THAT THE ARGUMENT HAD NOT ESCALATED. THE SUSPECT REFUSED TO TALK WITH THE OFFICERS ABOUT THE SITUATION. BOTH PARTIES REFUSED TO LEAVE THE RESIDENCE. . . .

[2]Interestingly, the record reveals that Father formerly worked in some capacity in the Knox County Fourth Circuit Court.

[3]We have set out principles for dealing with pro se litigants:

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*See Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)).

to Wife, they successfully passed all four random drug tests they had been given. Wife further noted that they had been visited by counselors for drug and alcohol abuse, domestic violence, and anger management. She also confirmed the following: the crowded conditions at the family residence; her son was arrested at school in an incident involving alcohol; the domestic violence police report; and that her minor son's pregnant girlfriend, also a minor, lived in the family residence.[4]

Upon Father taking the stand, he accused Mother of causing him problems with DCS, his taxes, and the Fire Marshal. Mother's counsel objected to Father's statements on the grounds of speculation and hearsay, but the trial court allowed Father to continue because of his pro se status. On cross examination, when Father was asked if the police had come to his residence on a domestic violence call, he said he could not remember. Once reminded about three calls to the police made in May and June of 2010, Father admitted that the police had come to his residence.[5]

The last person to testify was Father's daughter, Kayla. She stated that she got along well with Father's new wife, that she made good grades in school, and that she enjoyed seeing her sister, the Child.

On November 29, 2010, the trial court entered the following memorandum opinion:

At the outset of the cause it was stipulated after opening statements that a material change of circumstances had occurred since the permanent parenting plan of January 27th of '09. That material change of circumstances is the father's remarriage and his move from apartment to a mobile home, in effect a four bedroom mobile home.

The child in question is seven years old; she attends East Knox Elementary School. The father's prayer for more co-parenting time does not include a prayer for a change in child's school district. This is good for the child, who prospers in her present school.

---

[4]In Father's brief, he indicated that the girlfriend no longer resides with the family because it was discovered that Wife's son was not the father of the child.

[5]In regard to the incident at school involving Wife's son, Father related that "[t]here was no evidence and all charges were dropped and there was never any charges of a sexual nature." In his brief, Father indicated that his Wife's son is on medication for bipolar disorder and ADHD. An incident report in the record reflects that police officers have responded to a violent outburst of Wife's son.

Accordingly, the case moved on to consideration of the best interest of the child, the threshold matter of material change of circumstances having been met. It was noted that since the permanent parenting plan of January 27th of '09 an emergency matter had been brought to this court pursuant to local rule 28, reducing the father's co-parenting time to daytime only on weekends. There was some testimony as to whether the father had violated the strictures contained therein -- that he have the child with him only and not around other persons -- and the Court finds minimal and insignificant violations of that extreme stricture.

The Court finds that the mother or her agents steadily instigate investigations by various agencies, making phone calls that lead to investigations, as often as on a weekly basis, of the father's circumstances. Perhaps this is done in good faith. Perhaps this is merely good parenting and concern for the child, but the investigations have led to little and they are disrupting.

The Court finds that the father's home is crowded but that he and his new wife are working hard to make this situation work. The Court finds that the father is sincere, he's honest, he's straightforward and hardworking; it is in the best interest of the child that she have more contact with him. It shall be on a seven and seven basis, with exchange every Wednesday. So, fifty/fifty co-parenting time. The decision making shall be left in the joint posture at the present time, the Court hoping that these parents can cooperate -- they do have certain levels of cooperation. If in the future it is not possible for these two parents to cooperate in decision making this Court will chose one of them to have sole decision making authority. . . .

On December 1, 2010, Mother, upon hiring a new attorney with a conflict with the original trial judge, moved to recuse the judge from conducting further hearings in this matter. Nine days later, the trial judge entered an order of recusal. Mother timely filed a Rule 59 motion, asking that the order modifying the PPP be set aside or that a new trial be conducted. The judge who heard arguments regarding this matter in February 2011 affirmed the findings of the trial court.[6] This appeal followed.

---

[6]The matter was assigned to the Presiding Judge of the 6th Judicial District, the Honorable Wheeler A. Rosenbalm.

## II. ISSUES

Mother raises the following issues:

1. Whether the trial court erred in not addressing specific factors contained in Tenn. Code Ann. § 36-6-106 in evaluating the best interests of the Child.

2. Whether the trial court erred, based upon the evidence at trial, in finding that it was in the best interests of the Child to spend fifty percent of her time with her father.

3. Whether the trial court erred in denying Mother's Rule 59 Motion to alter or amend the order modifying the parties' permanent parenting plan or for a new trial.

## III. STANDARD OF REVIEW

We review the trial court's conclusions of law under a de novo standard, with no deference to the conclusions made by the lower court. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569-70 (Tenn. 2002); *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). A "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d).

In applying the de novo standard, we acknowledge that "[t]rial courts are vested with wide discretion in matters of child custody" and that "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). "Because '[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings themselves,' appellate courts 'are reluctant to second-guess a trial court's decisions.'" *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004)(quoting *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). Appellate courts should only set aside the trial court's judgment in such cases when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

# IV. DISCUSSION

It is well settled that "[a] custody decision, once final, is res judicata upon the facts in existence or reasonably foreseeable when the decision was made." *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007). However, because the circumstances of children and parents can change, the courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Id.* at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)); *see also Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995).

Modification of an existing parenting arrangement involves a two-step analysis. Tenn. Code Ann. §§ 36-6-101(a)(2) (B) and (C). The parent attempting to modify the existing custody or visitation arrangement first must prove that a material change in circumstance has occurred. *Id.* We note that the determination of whether a "material change of circumstance" has occurred requires a different standard depending upon whether a parent is seeking to modify custody (i.e., change the primary residential parent) or modify the residential parenting schedule. *See* Tenn. Code Ann. §§ 36-6-101(a)(2)(B) and (C); *Massey-Holt v. Holt*, 255 S.W.3d 603, 608 (Tenn. Ct. App. 2007) (Tenn. Code Ann. § 36-6-101(a)(2)(C) has been found to set "a very low threshold for establishing a material change of circumstances")).

Tenn. Code Ann. § 36-6-101(a)(2)(B) specifically provides:

> If the issue before the court is a modification of the court's prior decree pertaining to *custody*, the petitioner must prove by a preponderance of the evidence a material change of circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

(Emphasis added). Tenn. Code Ann. § 36-6-101(a)(2)(C) reflects the following:

> If the issue before the court is a modification of the court's prior decree pertaining to *a residential parenting schedule*, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstances does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting

schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

(Emphasis added). As to the custody provision -- the issue relevant in this matter -- the statute requires that "the court shall make such a finding as to the reason and the facts that constitute the basis for the custody determination. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i).

In this case, the material change of circumstance cited by the trial court was "the father's remarriage and his move from apartment to a mobile home, in effect a four bedroom mobile home." As explained by Father, the trial court granted him increased custody because he "is now married and can provide a two parent home for the minor child."

Once the trial court determines that a material change of circumstance has occurred, the court must next determine whether modification of the existing parenting arrangement is in the best interest of the child. *In re J.C.S.*, No. M2007-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). This determination requires consideration of a number of factors, including those set out at Tenn. Code Ann. § 36-6-106(a) to make the custody determination, and those at Tenn. Code Ann. § 36-6-404(b) to establish the residential schedule. *Id.* The wording of the statutory provisions places a mandatory duty on the courts to consider these factors. *See Stovall v. The City of Memphis*, No. W2003-02036-COA-R3-CV, 2004 WL 1872896, at *3 (Tenn. Ct. App. Aug. 20, 2004).

The factors to consider in a proceeding requiring the trial court to make a custody determination regarding a minor child are as follows:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;

(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . . ;

(4) The stability of the family unit of the parents or caregivers;

(5)  The mental and physical health of the parents or caregivers;

(6)  The home, school and community record of the child;

(7)(A)  The reasonable preference of the child, if twelve (12) years of age or older;

> (B) The court may hear the preference of a younger child on request.  The preferences of older children should normally be given greater weight than those of younger children;

(8)  Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . . ;

(9)  The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10)  Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a)(1)-(10).  The language of Tenn. Code Ann. § 36-6-106(a) is not permissive; trial courts are required to consider all factors bearing on the child's best interest.

Trial judges are not required to articulate every fact and its application in custody cases.  *See Murray v. Murray*, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010)(stating that "while the statute requires the trial court to consider all the applicable factors, there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination").  However, the trial judge must make a best interest analysis to determine which parent is comparatively more fit.  *Id*.

From our review of the trial court's order, we cannot conclude that the trial court made a comprehensive best interest analysis in this case.  The court did not indicate that it considered the fact that Mother had been the primary caregiver all of the Child's life prior to the change in custody.  Nothing in the record indicates that Mother was unable or

unwilling to provide for the Child or that Father's "remarriage" enhanced his ability to provide for the Child. Mother has exhibited great stability as compared to Father. Also, consideration must be given to the character and behavior of the other persons who reside in Father's home and who have interactions with the Child. Indeed, Father has noted in his brief that while Wife's son's bipolar episodes have decreased with medication, he still continues to experience them. Father has further acknowledged that because of Wife's custody disputes regarding her children, counselors come "to our home once per week to help us with domestic violence, anger management, and alcohol and drug awareness." Consideration of all these matters is required by the relevant statute to make a proper custody decision regarding the Child.

As we noted in *Cosner v. Cosner*, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008), "[w]e recognize that the circumstances of children and their parents inevitably change - children grow older, their needs change, one or both parties remarry. But not all changes in the circumstances of the parties and the child warrant a change in custody." *Id.* "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." *Id.* (citing *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)).

Father, as the petitioner recognized by the trial court, bears the burden of showing both that a material change of circumstance affecting the welfare of the Child has arisen and that such material change weighs in favor of greater custody rights than under the challenged custody order. Under a proper analysis of the Child's best interests pursuant to Tenn. Code Ann. § 36-6-106, Father has failed in meeting his burden. We remand the matter so the parties may present evidence concerning the Child's best interest. In view of the remand, we pretermit consideration of Mother's remaining issues.

## V. CONCLUSION

Upon review of the record, the judgment of the trial court is reversed. We remand this case to the trial court for further proceedings consistent with this opinion and in compliance with Tenn. Code Ann. § 36-6-1-106. Costs of the appeal are assessed against the appellee, Kirby E. Fuller.

_____
JOHN W. McCLARTY, JUDGE