IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 22, 2004 Session

## BRENT G. JOHNSON v. KIMBERLY S. JOHNSON

**Appeal from the Chancery Court for Union County**
**No. 3935     Billy Joe White, Chancellor**

_____

**No. E2003-01962-COA-R3-CV - FILED NOVEMBER 9, 2004**

_____

Brent G. Johnson ("Father") and Kimberly S. Johnson ("Mother") were married with their only child, a daughter, being born in October of 2000. The child was born with a rare metabolic disorder resulting in developmental delays, among other things. The parties separated shortly after their daughter was born. Mother then moved to West Virginia with the parties' daughter. Father filed for divorce and Mother counterclaimed also seeking a divorce. Both parties sought to be designated as the primary residential parent of their young daughter. At a hearing to determine temporary custody, the parties reached an agreement whereby Mother would return to Tennessee within three months and Mother would be designated as the primary residential parent pending the trial. The Trial Court entered an order setting forth this accord and establishing Father's visitation schedule pending Mother's return. Mother reneged on her agreement, refused to return to Tennessee, and then set about to systematically and intentionally prevent Father from having any meaningful co-parenting time. The Trial Court later entered a final judgment designating Mother as the primary residential parent, but requiring Mother to return with the child to Tennessee and to stop interfering with Father's co-parenting time. Mother appeals claiming the Trial Court was without authority to order her to return to Tennessee. The Trial Court's order designating Mother as the primary residential parent is affirmed if Mother voluntarily returns to Tennessee. If Mother chooses not to return, the Trial Court's judgment designating Mother as the primary residential parent is vacated, and the Trial Court is instructed to determine which parent then should be designated as the primary residential parent consistent with the best interest of the minor child, with the understanding that should primary residential custody remain with Mother in West Virginia, Mother will continue to do her best to prevent Father from having any meaningful relationship with his daughter.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery
Court Affirmed in Part and Reversed in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Johnny V. Dunaway, LaFollette, Tennessee, for the Appellant Kimberly S. Johnson.

D. Vance Martin, Knoxville, Tennessee, for the Appellee Brent G. Johnson.

## OPINION

## Background

Mother and Father were married on May 28, 1995. The parties lived in Union County, Tennessee, when their daughter was born on October 23, 2000, but the parties separated two months later. The parties' daughter was born with a rare metabolic disorder known as Galactosemia. The child has a variant form of Galactosemia which is less severe, but which nevertheless has resulted in her exhibiting developmental delays in speech and motor skills, as well as social and emotional delays.

In February of 2001, Father filed a complaint in the Union County Chancery Court seeking a divorce from Mother. Father still lived in Union County when the complaint was filed, but Mother recently had moved to West Virginia and had taken the young child with her. Mother answered the complaint and filed a counterclaim asserting that she was entitled to a divorce. Father and Mother each sought to be designated the primary residential parent of their young daughter.

A hearing was held in May of 2001 and the Trial Court entered an Order in July memorializing its findings from that hearing. In relevant part, the Order provides as follows:

> [I]t duly appeared to the Court that temporary custody of the parties' minor child should be placed with the Mother, that the Father should have co-parenting time with the child under one of two arrangements that were presented to counsel and the parties, with the hope that the parties could, after discussion, decide upon an arrangement for co-parenting, and absent an agreement, the Court would decree an arrangement. Whereupon, the parties discussed the options outlined by the Court and reached an accord concerning which of the options under which they would proceed, and it is therefore ORDERED, ADJUDGED, and DECREED as follows:
>
> 1. The Mother is hereby granted custody of the parties' child … pending the trial of this cause;

2. The Mother shall have a period of three months from the date of the hearing to make arrangements to obtain employment and resume her residence in Tennessee.

The Trial Court then established Father's co-parenting time which the Trial Court noted would provide Father the opportunity to educate himself regarding treatment of the child's medical condition. Upon Mother's return to Tennessee, Father would begin exercising standard co-parenting time.

Less than a mother after the above Order was entered, Father filed a Petition for Contempt claiming that Mother was refusing to allow him co-parenting time in violation of the July 2001 Order. Six days after Father filed the Petition for Contempt and one day before the deadline agreed to by Mother for her return to Tennessee, Mother filed a motion asking the Trial Court to reconsider its previous Order requiring her to move back to Tennessee. According to Mother:

[At the May 16 hearing,] this Court instructed [Mother] to seek employment, temporary living arrangements, and child care arrangements in Tennessee. [Mother] has not been able to comply with this directive and does not have the economic ability to relocate.

Further, it is not in the best interest of the parties' minor child to relocate from West Virginia back to Tennessee.

Mother also filed a response to the Petition for Contempt, generally denying that she engaged in any contemptuous behavior or that she interfered with Father's co-parenting time. Father later filed another Petition for Contempt based on Mother's failure to return to Tennessee within the time frame as agreed to by the parties and as previously ordered by the Trial Court.

A hearing was held on the various pending motions and the Trial Court entered an Order on March 12, 2002, setting forth its findings and conclusions. Due to the nature of some of the Trial Court's findings, we will quote at length from this Order:

1. This case is the same situation as on May 16, 2001. The court has made a mistake in hearing this matter any further. The Order of May 16 is, in all respects, confirmed. (For the record, this matter gets down to what the Court faced then, that ninety-nine times out of a hundred if a Mother moves out of the State of Tennessee, the Court approves it, it being ordinarily to the best interest of the child, and in most cases it is.)

2. In this case we've had a terrible experience with visitation. There has been a concerted effort by Mother to stop and interfere with Father's visitation. There has been no meaningful visitation, no

-3-

meaningful co-parenting in this matter. There's been no meaningful effort to comply with this Order of May 16, and had there been a meaningful visitation type situation, at least some co-parenting at a distance, this Court would have considered other alternatives. The Court would have considered that back in May. There's a lot of good reasons why Mother should not have been back in Knoxville, should not have to be in Knoxville. But not only did the Court have half a day or more of proof in May, the Court has about the same proof today that visitation is totally impossible under the circumstances of her being in West Virginia.

3. This child certainly is in special circumstances. This lady is an overprotective, if anything, Mother. That's not necessarily bad….. She's a good Mother.… But it's harmful to a child to alienate it from its Father and from his family in most situations. The Court finds that this child has not been given any chance to be with [her] Father. It is insulting to go to a home of an in-law where – this young lady lived with the grandparents in this case for some period of time.… They go to her home and they find this note shushing them. "Mother and baby are taking an afternoon nap. We will call you when we wake up." That's not so bad except these people just traveled five hours for visitation, and then there's not a call made. But then another note, "Please leave purse, bags, weapons, mace, and all recording equipment in your vehicle. Please remove your shoes before entering." The Court would not enter under those circumstances, but I guess the Father has to if he wants to visit his child.… [There] will never be a meaningful relationship with this Father and this child under the circumstances as they now exist.… [T]he Mother in this case has pushed this matter almost to the point of challenging this Court and saying, "We don't care what you say and we don't care what you think. This is what I'm going to do." And the Court doesn't like to be challenged. The Court feels very challenged in this matter. That all these preparations have been not to come to Tennessee, not to give the father any information on how to feed and take care of this child. The Court personally thinks it would be a crime almost for this child to be taken away from its mother, but sometimes crimes have to be committed. This Mother should be in custody of this child, but there are other principals (sic) involved also. This Father has a right to some near equal co-parenting time, and it has been denied and denied intentionally, and the Court's going to do something about it.

-4-

The Trial Court then reaffirmed its previous order requiring Mother to return to Tennessee and set forth Father's co-parenting time pending Mother's return.

After the March 2002 order was entered, Father filed several more motions claiming Mother still was refusing to relocate to Tennessee and was continuing to interfere with his ability to exercise co-parenting time with his child. A final hearing was conducted in April of 2003. The Trial Court admitted into evidence a psychological evaluation which had been prepared by Dr. Vey Michael Nordquist, but refused to allow Mother to introduce any other additional evidence on parenting issues. According to the Trial Court, it already had heard enough on these issues at the previous hearings. In its Final Judgment, the Trial Court addressed the various matters typically presented in divorce proceedings, such as distribution of the marital property and the like. With regard to custody of the minor child, the Trial Court designated Mother as the primary residential parent, ordered Mother to relocate to Tennessee within 60 days of its judgment becoming final, and set forth Father's co-parenting schedule.

Eight days after the Final Judgment was entered, Father filed another Petition for Contempt claiming Mother denied him visitation on the weekend of July 4, 2003. Father further claimed Mother was denying him telephone contact with the child. Father filed yet another Petition for Contempt after Mother allegedly denied him visitation on the weekend of July 18, 2003, as well as his summer visitation which was to take place in August. A hearing was held on Father's motions and the Trial Court entered an Order giving Father additional visitation with his child to make up for the time that was missed in July through September.

Mother appeals raising the following two issues which we quote from her brief:

I.      Did the Trial Court err by entering an Order compelling Appellant to move back to Tennessee from West Virginia simply to make it easier for Appellee to have visitation, where such a move is not in the best interest of the minor child?

II.      Did the Trial Court err by refusing to receive testimony from Appellant's witnesses at the trial on the merits of this case, conducted April 22, 2003, as evidenced by the offer of proof, which testimony had not been heard previously and which had a direct bearing on the welfare of the minor child?

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County*

*Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). In applying this standard of review, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody" and that "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves," appellate courts "are reluctant to second-guess a trial court's decisions." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). The courts' paramount concern in a custody case is the welfare and best interest of the parties' minor children. *Ruyle v. Ruyle*, 928 S.W.2d 439, 441 (Tenn. Ct. App. 1996); *Koch*, 874 S.W.2d at 575. This determination necessarily turns on the particular facts of each case. *Koch*, 874 S.W.2d at 575.

Tenn. Code Ann. § 36-6-106(a) requires a trial court to consider all relevant factors when making a custody determination, including but not limited to:

> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> (7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
>
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are

-6-

allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

In addition to the foregoing, Tenn. Code Ann. § 36-6-101(d) establishes "the legislative intent that the gender of the party seeking custody shall not give rise to a presumption of parental fitness or cause a presumption or constitute a factor in favor or against the award of custody to such party."

Mother argues on appeal that the Trial Court was without authority to require her to return to Tennessee. Very recently, the Middle Section of this Court released its opinion in *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 Tenn. App. LEXIS 676 (Tenn. Ct. App. Oct. 15, 2004).[1] In *Cummings*, we addressed the propriety of a trial court's injunction prohibiting the mother from moving outside of Williamson County absent the express consent of the father. In vacating the injunction, we stated we could find "no basis in law for the trial court's injunction preventing an adult citizen from living where she may choose." *Id*., at * 46. We went on to add that to the extent the injunction was in response to a concern about the mother relocating in the future, that situation was governed by the parental relocation statute, Tenn. Code Ann. § 36-6-108. Even that statute, however, was "not designed to give the courts the authority to dictate where divorced parents must live, but only to protect the visitation rights of non-custodial parents in situations where the custodial parent wishes to relocate to another state or more than 100 miles from the residence of the non-custodial parent." *Id*., at ** 46, 47. We agree with Mother that the

---

[1] The time in which to file a Rule 11 appeal to the Tennessee Supreme Court in *Cummings* had not yet expired when our Opinion in the present case was released.

Trial Court was without authority to order her to move back to Tennessee. However, resolution of this appeal remains far from over.[2]

It is important to emphasize exactly what the Trial Court ultimately held, i.e., that it was in the child's best interest for two events to occur. Specifically, (1) that Mother be designated as the primary residential parent; and (2) that Mother return to Tennessee with the child. With regard to the first aspect of the Trial Court's ruling, Mother, obviously, agrees with the Trial Court's conclusion that it was in the best interest of the child for her to be designated the primary residential parent. On appeal, Father does not challenge this aspect of the Trial Court's ruling and does not argue that he should have been designated the primary residential parent if Mother relocates to Tennessee. Unfortunately, the two aspects of the Trial Court's ruling are intertwined and cannot effectively be separated at this point because the Trial Court did not state what would be in the child's best interest if Mother refuses to relocate to Tennessee.

Mother argues that even if the Trial Court could require her to relocate to Tennessee, such a move would not be in the child's best interest. At trial, Mother went to great lengths arguing the medical care her daughter was receiving in West Virginia was superior to that which is available in the East Tennessee area. Father disagrees and argues that the medical care providers in East Tennessee certainly are able to address his daughter's special needs.

One of the child's treating physicians is Dr. Ann Lambernedis, a pediatrician with a medical practice in Scott Depot, West Virginia. Dr. Lambernedis has been treating the parties' child since February of 2001. According to Dr. Lambernedis' deposition testimony, she did "not have any reservations that there are adequate people [in East Tennessee], medical physicians as well as therapists who can provide the *same* care." (emphasis added). When asked if there was any reason why Mother could not return to East Tennessee and adequately care for the child with the present medical community, Dr. Lambernedis responded: "From a medical standpoint, I don't see a problem." Dr. Lambernedis further testified that she did not have any reason to believe that Father could not get "up to speed" on matters such as the restrictions in the child's diet or the monitoring and scheduling processes.

In discussions with Mother's counsel following opening arguments, the Trial Court stated that the medical proof established proper medical care was available both in Knoxville and Oak Ridge. Mother's counsel responded that "[o]bviously, there are good programs available in Tennessee, but we have folks [in West Virginia] that have been working with her on a daily basis…."

---

[2] This does not mean that Mother could not have been held in contempt for refusing to obey the Trial Court's order that she relocate to Tennessee. *See, e.g., Frye v. Frye*, 80 S.W.3d 15, 18-19 (Tenn. Ct. App. 2002) ("[I]n *State v. Jones*, 726 S.W.2d 515 (Tenn. 1987), our Supreme Court reaffirmed the principle that with proper jurisdiction, 'even though the trial judge's order is erroneous and is reversed on appeal, an adjudication of contempt for failure to obey that order will be sustained.' *Id*. at 517.").

We are confident that if the Trial Court had any reservations about the quality of medical care available to the child in East Tennessee, it would not have required Mother to relocate. In our opinion, when the Trial Court required Mother to relocate to Tennessee, albeit incorrectly, it implicitly agreed with Father regarding the quality of medical care available to the child in East Tennessee. We have reviewed the medical related proof contained in the record and conclude that the preponderance of the evidence does not weigh against the Trial Court's conclusion that the medical care available to the child in the East Tennessee area is such that the parties' daughter can receive appropriate medical care here. We reach this conclusion even after considering the proof which Mother claims was excluded improperly by the Trial Court. Therefore, even if the Trial Court erred when excluding this medical related evidence, we hold that any such error was harmless.

Mother also claims that she does not have the financial ability to move to Tennessee. Mother is a graduate of Marshall University in Huntington, West Virginia. Mother worked for various pharmaceutical companies for over thirteen years. Mother earned an annual salary in excess of $90,000 at her most recent job prior to moving to West Virginia. At the time of trial, Mother was working at home on a part-time basis earning $6.25 per hour.

When the Trial Court issued its final judgment, it also distributed the marital property and its ruling in this regard is not challenged on appeal. The Trial Court ordered the marital residence and a 1995 Malibu boat be sold at public auction. The Trial Court awarded Mother a lien in the amount of $43,504.30 against the proceeds from the sale. Any remaining money was to be divided equally by the parties. The marital residence and the boat eventually were sold at public auction for a combined total of $247,500. Although not entirely clear from the record, the outstanding balance on the mortgage for the house was between $192,000 and $195,000. There was no indebtedness on the boat. The sale price for the house and boat certainly appears to this Court to be sufficient to cover Mother's lien of $43,504.30, even after deducting the expenses incurred in auctioning these items. The point being, $43,504.30 will go far if Mother does decide to move to Tennessee. Further, we find no support in the record for Mother's position that her financial situation would be any better in West Virginia than it would be in Tennessee.

On remand, Mother shall have fifteen (15) days from the date this Opinion becomes final in which to notify the Trial Court whether she voluntarily will return with the child to the East Tennessee area. If Mother indicates that she is going to return, her relocation must be completed within sixty (60) days from the date this Opinion becomes final. Assuming Mother has relocated within this time frame, then the Trial Court's judgment designating Mother as the primary residential parent is affirmed.

Because we have reversed that portion of the Trial Court's judgment which ordered Mother to return to Tennessee, we must discuss what is to happen on remand if Mother chooses to remain in West Virginia or does not accomplish her relocation in a timely manner under this Opinion. If either of these situations occur, then the portion of the Trial Court's judgment which designated Mother as the primary residential parent is vacated. The Trial Court then must conduct additional proceedings as may be required in order to determine what is in the best interest of the

minor child in accordance with Tenn. Code Ann. §36-6-106(a), with the understanding that Mother will remain in West Virginia and cannot be ordered to return to Tennessee.

The Trial Court obviously was frustrated with Mother's repeated and effective attempts at denying Father co-parenting time. The Trial Court even went so far as to find that Father never would have a meaningful relationship with his child if Mother remains in West Virginia. The proof in the record overwhelmingly supports this finding. Mother has repeatedly refused to allow Father co-parenting time in direct defiance of the Trial Court's various orders. There is nothing whatsoever to suggest to this Court that Mother's behavior will change. In fact, Dr. Nordquist stated the following in his report:

> There also is no doubt that [Mother] harbors very hostile feelings toward [Father] and is not capable right now of supporting his role as [the child's] parent. Nothing that I or the Court may say will change her views about [Father]. She has no insight into the contribution she is making to alienating [the child] from her father. If left unchecked, [Mother] will do serious harm to the father-child relationship once [the child] has the cognitive awareness to know how [Mother] feels.

In light of the foregoing, when determining on remand what is in the child's best interest if Mother does not move back to Tennessee, the Trial Court properly may accept that Father will be prevented from having any meaningful relationship with his daughter if Mother remains in West Virginia and is designated the primary residential parent. The Trial Court need not hear any additional proof on this particular point since we are hereby affirming that finding. This *should not* be taken as an implicit directive by this Court either to or not to designate Father as the primary residential parent. Tenn. Code Ann. § 36-6-106(a)(10) instructs a trial court to consider "the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child," but this is not the only relevant factor to be considered.

We previously affirmed in this Opinion the Trial Court's finding that proper medical resources are available in East Tennessee to treat the parties' daughter, a conclusion we reached even when considering the medical related evidence excluded by the Trial Court. Because we have affirmed the Trial Court's finding on this issue, the Trial Court need not entertain any further proof on the quality of medical care in West Virginia v. East Tennessee.

An important issue raised by Mother which we have yet to address is her argument that the child has become accustomed to her health care providers in West Virginia and, therefore, it now is not in the best interest of the child to return to Tennessee. We fully understand that such a move may be a difficult adjustment for this child. However, based on the record before us we are confident that such an adjustment can be made. Mother informed the Trial Court at the hearing in May of 2001 that she voluntarily would return to Tennessee, and this "accord" was incorporated into the Trial Court's order. When she later refused to return, she violated both her agreement and the

Trial Court's order. Had she returned to Tennessee when she originally agreed to do so, she and the child would have been here for over three years and would have developed relationships and become well adjusted to the health care providers here. Of course, this never happened because Mother changed her mind and ignored both her agreement and the Trial Court's order. If further proceedings are necessary on remand, the fact that the child may or even will have some difficulty in adjusting to a move to East Tennessee cannot be held against Father since this difficulty has come about in the first place solely because Mother reneged on her initial agreement and refused to comply with the Trial Court's orders. In short, Mother will not be allowed to refuse to comply with the Trial Court's orders which were based on her initial agreement to return to Tennessee and then use the resulting situation to argue the child's best interest mandates that she wins. Therefore, further proof on this issue likewise is unnecessary.

The child has certain daily routines which are required due to her medical condition. Father has had difficulty learning these routines because Mother has systematically set about to exclude Father from this child's life. If the Trial Court finds on remand that Father still is not "up to speed" on these matters and to the extent this can be attributed to Mother's preventing Father's court ordered co-parenting time, the Trial Court is instructed not to hold this fact against Father.

As noted previously, Mother made an offer of proof after the Trial Court refused to hear additional testimony from various witnesses. The result we have reached so far has resulted in our affirming the exclusion of much of this evidence, except for the testimony of Kim Reagan, Susan Miller, and Sherri Lott. The offer of proof was detailed and Father's counsel was given the opportunity to cross-examine these three witnesses. After our review of this testimony, we hold the Trial Court shall consider the testimony of these three witnesses and give it whatever weight it deems appropriate if further proceedings are required on remand.

This has been a very difficult and frustrating case for the Trial Court. The obvious intent behind ordering Mother to return to Tennessee was so Mother could remain the primary residential parent and, at the same time, Father could have the opportunity to play an important role in his child's life, something Mother consistently has denied to him. If Mother chooses not to return to Tennessee with the child, the Trial Court on remand will have a most difficult decision to make. Quite simply, the ball now is back in Mother's court. She can ensure her designation as the primary residential parent by returning to Tennessee with the child. Or, she can remain in West Virginia and run the risk of having Father designated as the primary residential parent. While we are certain Mother will deem having to make this choice unfair or wrong, the fact is that she is fully responsible for the situation, due in large part to her successful efforts at excluding Father from this child's life.

There already have been several hearings where proof was taken as well as a full trial. We have tried to limit the issues on remand in hopes that this matter can proceed quickly to a final resolution. It is in no one's best interest for custody determinations to linger in the court system for years. We hope the Trial Court will be able to expedite this matter so a resolution can be reached in the near future. If further proceedings are necessary, we believe it is likely that another appeal will be filed, regardless of the Trial Court's ultimate custody determination. Therefore, if the Trial Court

must decide what is in the best interest of the child vis-a-vis Mother living in West Virginia v. Father in Tennessee, then the Trial Court is instructed to be as detailed as possible in its final order, including but not limited to listing each of the factors it relied on in reaching its conclusion and the weight given to that particular factor, etc.  There is one final point which must be mentioned.  The Trial Court's frustration with Mother is understandable given her calculated defiance of numerous court orders, and it is clear that the effect of her actions, i.e., excluding Father from the child's life, is an entirely relevant consideration in determining the best interest of the child.  However, designating Father as the primary residential parent is not appropriate simply to punish Mother for violating the court orders regarding visitation.  *See, e.g.,  Roache v. Bourisaw*, No. M2000-02651-COA-R3-CV, 2001 Tenn. App. LEXIS 756, at ** 18, 19 (Tenn. Ct. App. Oct. 20, 2001), *no appl. perm appeal filed* (A "[c]hange of custody is not appropriate as a method to punish a parent for failing to comply with court orders regarding visitation.").[3]

## Conclusion

The judgment of the Trial Court is affirmed in part and reversed in part, and this cause is remanded to the Trial Court for further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below.  Costs on appeal are assessed against the Appellant, Kimberly S. Johnson, and her surety.

_____
D. MICHAEL SWINEY, JUDGE

---

[3] In *Roache*, we went on to add that "a custodial parent's actions which interfere with the relationship between the child and non-custodial parent may constitute a material change of circumstances" for purposes of changing custody after a final custody order has been entered.  2001 Tenn. App. LEXIS 756, at ** 18, 19.  While what is involved here is an initial custody determination rather than a change of custody determination, the principle remains the same.