IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 8, 2021 Session

**STEFANI FRANKLIN v. JIMMY FRANKLIN**

**Appeal from the Circuit Court for Shelby County
No. CT-001869-13   Valerie L Smith, Judge**

_____

**No. W2020-00285-COA-R3-CV**
_____

In this post-divorce case, Father appeals the trial court's order allowing Mother to relocate with the parties' son from the Memphis area to Houston, Texas.  Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and KRISTI M. DAVIS, J., joined.

R. Linley Richter, Jr., Cordova, Tennessee, for the appellant, Jimmy Franklin.

Jeffrey Jones, Bartlett, Tennessee, for the appellee, Stefani Aglikin (Franklin).

**OPINION**

**I.  Background**

On February 18, 2014, the Circuit Court of Shelby County ("trial court") declared Appellant Jimmy Franklin ("Father") and Appellee Stefani Aglikin ("Mother") divorced. At that time, the parties entered an agreed permanent parenting plan (the "parenting plan") concerning their minor child, G.F. (d/o/b November 2011) (the "Child").  Under the parenting plan, Mother was named the primary residential parent, and it was ordered that the Child would reside with her for the majority of the year.  Father exercised the following visitation schedule with the Child: every other weekend from Friday after school until Monday before school; every Tuesday from after school until 7:30 p.m.; and every other Thursday from after school until 7:30 p.m.  The parties alternated holidays with the Child

and employed a week-on-week-off schedule during the summer. Although the parties agreed to jointly make major decisions for the Child, Mother was given final decision-making power should the parties disagree. At the time of divorce, and in the years that followed, both parties resided in the Memphis metropolitan area.

In late 2019, Mother was offered a position as Director of Transplant Financial Services at the Houston Medical Center in Houston, Texas. She accepted the offer on the condition that the trial court allow her to relocate with the Child. On November 11, 2019, Mother notified Father via a letter from her attorney of her intent to relocate. By letter of December 3, 2019, Father objected to the relocation. On December 6, 2019, Mother filed her petition for relocation in the trial court. Father filed his answer in opposition on January 6, 2020.

Mother's petition for relocation was tried on January 9 and 13, 2020. The trial court heard testimony from the following witnesses: (1) Mother; (2) Father; (3) Dr. John Leite, a clinical child psychologist and Father's expert witness; (4) Katherine Aglikin, the Child's maternal grandmother; and (5) Christopher Jenkins, Mother's ex-fiancé.[1] By order of January 21, 2020, the trial court granted Mother's petition and ordered the parties to mediation to modify the existing parenting plan. On February 18, 2020, the parties submitted a new agreed parenting plan to the trial court. On February 20, 2020, Father filed his notice of appeal of the trial court's grant of Mother's petition for relocation.[2]

## II. Issue

Although Father raises several issues on appeal, we conclude that the sole dispositive issue is whether the trial court erred in allowing Mother to relocate with the Child to Houston, Texas.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." **Brunswick Acceptance Co., LLC v. MEJ, LLC**, 292 S.W.3d 638, 642 (Tenn. 2008).

---

[1] At the close of Mother's proof, Father moved for involuntary dismissal of the petition, arguing that Mother's letter notice failed to comply with the requirements in the relocation statute. The trial court found that Father should have brought this issue in the form of a motion to dismiss prior to trial. Accordingly, the trial court found that Father waived the issue, and it continued to hear Mother's petition for relocation.

[2] It does not appear that either party appeals the new parenting plan.

Furthermore, we are "'mindful that trial courts are vested with wide discretion in matters of child custody.'" *Schaeffer v. Patterson*, No. W2018-02097-COA-R3-JV, 2019 WL 6824903, at *4 (Tenn. Ct. App. Dec. 13, 2019) (quoting *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Appellate courts will not interfere with a trial court's custody determination absent an abuse of discretion. *Dungey v. Dungey*, No. M2020-00277-COA-R3-CV, 2020 WL 5666906, at *2 (Tenn. Ct. App. Sept. 23, 2020) (quoting *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017)). Indeed, this Court may reverse a custody decision "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence." *Dungey*, 2020 WL 5666906, at *2 (quoting *C.W.H.*, 538 S.W.3d at 495). "This Court's 'paramount concern' is the well-being and best interests of the child . . . ." *Schaeffer*, 2019 WL 6824903, at *4 (citing *Johnson*, 165 S.W.3d at 645). Whether relocation is in a child's best interest often hinges on the particular facts of each case. *Schaeffer*, 2019 WL 6824903, at *4 (citing *Johnson*, 165 S.W.3d at 645). Because "custody and visitation determinations often [turn] on subtle factors, including the parents' demeanor and credibility . . . appellate courts are reluctant to second-guess a trial court's decisions." *Johnson*, 165 S.W.3d at 645; *see also Schaeffer*, 2019 WL 6824903, at *4. Indeed, as "trial courts are able to observe witnesses as they testify and to assess their demeanor, . . . trial judges [are best suited] to evaluate witness credibility." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citing *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)); *see also Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733 (Tenn. 2002) ("As this Court has repeatedly emphasized, a reviewing court must give 'considerable deference' to the trial judge with regard to oral, in-court testimony as it is the trial judge who has viewed the witnesses and heard the testimony."). To this end, "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells*, 9 S.W.3d at 783 (internal citations omitted). With the foregoing law in mind, we turn to the substantive issue.

## IV. Analysis

In July 2018, the Tennessee General Assembly amended Tennessee's relocation statute, Tennessee Code Annotated section 36-6-108. According to our research, this Court has applied the amended statute in only two other cases, *Dungey*, 2020 WL 5666906 and *Schaeffer*, 2019 WL 6824903. In these cases, we explained that the previous relocation statute "often required courts to conduct an analysis of whether the parents were spending 'substantially equal intervals of time' with the child and whether the parent seeking relocation demonstrated a 'reasonable purpose' for the proposed move." *Dungey*, 2020 WL 5666906, at *2; *see also Schaeffer*, 2019 WL 6824903, at *4-5. The amendment removed the "substantially equal intervals of time" and "reasonable purpose" criteria from the trial court's analysis. *Dungey*, 2020 WL 5666906, at *2. As noted in *Dungey*, the current version of the statute "restore[s] a significant amount of discretion to trial courts

and does not contain a presumption either for or against relocation." **Dungey**, 2020 WL 5666906, at *2 n.1.

Under the amended statute, "if a parent who is spending intervals of time with a child desires to relocate outside the state or more than fifty (50) miles from the other parent within the state," the relocating parent shall send notice to the other parent, and such notice shall include:

> (1) Statement of intent to move;
>
> (2) Location of proposed new residence;
>
> (3) Reasons for proposed relocation; and
>
> (4) Statement that absent agreement between the parents or an objection by the non-relocating parent within thirty (30) days of the date notice is sent by registered or certified mail in accordance with subsection (a), the relocating parent will be permitted to do so by law.

Tenn. Code Ann. § 36-6-108(a).[3] If the non-relocating parent timely objects to the relocation, "the relocating parent shall file a petition seeking approval [from the court] of the relocation." Tenn. Code Ann. § 36-6-108(b). "The non-relocating parent [then] has thirty (30) days to file a response in opposition to the petition." Tenn. Code Ann. § 36-6-108(b). Upon review of such petition, a trial court must determine whether relocation is in the child's best interest. Tenn. Code Ann. § 36-6-108(c)(1). There are several factors for courts to consider when making this best interest determination. *See* Tenn. Code Ann. § 36-6-108(c)(2). Below, we review these factors against the trial court's findings of facts

---

[3] As mentioned briefly, *supra* footnote 1, at the close of Mother's proof, Father moved for involuntary dismissal of her petition for relocation. Specifically, Father argued that Mother's notice failed to comply with Tennessee Code Annotated section 36-6-108(a)(4). Although Mother's notice stated that Father had a "right to file a petition in opposition to the move within 30 days of the receipt of [the] letter," it did not explain that if Father did not object to Mother's relocation within thirty (30) days that Mother would be permitted to relocate with the Child by law. The trial court found that Father should have brought this argument "in the form of a motion to dismiss prior to beginning [the relocation hearing]." As such, the trial court held that Father waived this issue. Even assuming, *arguendo*, that the trial court erred in finding that Father waived this issue, such error was harmless. The purpose of section 36-6-108(a)(4) is to provide the non-relocating parent with notice that he or she must object to the proposed relocation within thirty (30) days of the date the notice is sent or the relocating parent will be permitted by law to relocate with the child. Here, Mother notified Father of her intent to relocate on November 11, 2019. By letter of December 3, 2019, Father objected to the relocation, which prevented Mother's and the Child's automatic relocation. In short, even if Mother's notice failed to fully comply with the statute, and even if the trial court erred in finding that Father waived this argument, Father was not prejudiced by these errors because he timely objected to Mother's notice to relocate.

and the proof in the record.[4]

***The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.***
***Tenn. Code Ann. § 36-6-108(c)(2)(A)***

Concerning the first factor, the trial court found that, despite divorcing when the Child was less than three years old, both parents enjoyed a loving relationship with him. Specifically, the trial court found that Father was very involved in the Child's life, volunteering as a room parent and acting as the Child's baseball coach. Although Father was continually present in the Child's life, the trial court found that Mother was the Child's primary residential parent and had "performed the majority of parenting responsibilities relating to the daily needs of the [C]hild."[5] The trial court further found that the Child spent "the majority of his time with Mother as overnight visits with Father [were] only every other weekend." Aside from the Child's relationship with the parents, the trial court placed "significant weight on the involvement of both siblings and other significant persons in the [C]hild's life." Specifically, the trial court found that the Child had no relationship with his half-sister, Father's daughter from a previous relationship. Furthermore, the trial court found that Father may have fathered another daughter (Father was unsure of her parentage), but the Child had no relationship with her. The trial court also found that Father was estranged from his parents. Conversely, the trial court found that "[t]he testimony of Mother, Father, and [Ms. Aglikin, the maternal grandmother,] establish[ed] that there [was] a significant relationship between [the Child] and his [maternal] grandparents." The trial court found credible Ms. Aglikin's testimony that she and her husband intended to move to Houston to support Mother and the Child should Mother be allowed to relocate. Ultimately, the trial court found that this first factor favored relocation.

On appeal, Father argues that "it is speculative at best" whether the maternal grandparents would move to Houston with Mother and the Child. As discussed, *supra*, we defer to the trial court concerning questions of witness credibility, and we will not re-evaluate such findings absent clear and convincing evidence to the contrary. *See **Wells**,* 9 S.W.3d at 783; ***Johnson**,* 165 S.W.3d at 645; *see also **Schaeffer**,* 2019 WL 6824903, at *4. Because Ms. Aglikin testified that she and her husband would move to Houston to support Mother and the Child, we cannot opine that the trial court erred in finding her testimony credible as there was no clear and convincing evidence to the contrary. Father also alleges that the trial court placed more weight on the Child's relationship with his grandparents than on the Child's relationship with Father in determining that this factor

---

[4] In his appellate brief, Father addressed the trial court's findings concerning only Tennessee Code Annotated section 36-6-108(c)(2)(A) and (B). Nevertheless, we address each factor in the statute, as did the trial court.

[5] The trial court made this finding under section 36-6-108(c)(2)(H), but we note that these facts are also pertinent here.

- 5 -

favored relocation. We disagree. As the trial court stated in its order, "[I]t [was] obvious to [the trial court] that both parents love[d] and want[ed] what [was] best for their child, [but] the [trial court could not] help but acknowledge the obvious relationship with [the Child's] maternal grandparents." The trial court did not substitute the Child's relationship with the grandparents for the Child's relationship with Father. Rather, it considered the Child's relationship with "other significant persons in the child's life," i.e. the maternal grandparents, as the statute instructs. *See* Tenn. Code Ann. § 36-6-108(c)(2)(A).

We cannot conclude that the trial court abused its discretion with regard to this factor. It is clear from the record that Mother performed the majority of parenting responsibilities, and that the Child spent the majority of his time with her. The record also demonstrates that, while Father was very involved in the Child's life, he did not share the same loving relationship with his other child(ren) or his parents. As such, the Child never established relationships with his paternal relatives. It appears that the only close familial relationship the Child developed (other than with his parents) was his relationship with the maternal grandparents. Indeed, Mother, Father, and Ms. Aglikin each testified that Ms. Aglikin often visited Memphis, for weeks at a time, to help care for the Child, and that she would also care for the Child during Father's visitation if both parents were unavailable. Accordingly, it is clear that the Child's relationship with his maternal grandparents was both "significant" and beneficial to the Child. From the evidence, we cannot surmise that the trial court's conclusion that this factor favored relocation "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence." *Dungey*, 2020 WL 5666906, at *2 (quoting *C.W.H.*, 538 S.W.3d at 495).

***The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.***
**Tenn. Code Ann. § 36-6-108(c)(2)(B)**

The trial court made several findings concerning this factor before concluding that it also favored relocation. The trial court first focused on the Child's emotional and behavioral needs. As an initial matter, the record shows that the Child was eight years old at the time of trial, was on the autism spectrum, and had been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). Mother testified that, over the last several years, she sought the expertise of numerous doctors and behavioral therapists to develop a comprehensive treatment plan for the Child's autism and ADHD. She testified that such treatment included medication to help with his hyperactivity and impulse control as well as social skills classes to learn how to appropriately interact with other children. The trial court found that, despite Mother's efforts, Father initially rejected the Child's ADHD diagnosis and refused to administer the Child's prescribed medications. The trial court further found that, even after Father was ordered to comply with the Child's treatment regimen, Father remained inconsistent in his administration of the Child's medications, which concerned the trial court. Ironically, although Father disputed the Child's ADHD

diagnosis, he cited that diagnosis as a reason for the trial court to deny Mother's relocation petition. Father called Dr. Leite, a clinical child psychologist, as an expert witness to testify that relocation would be particularly disruptive to the Child and would "exacerbate" his ADHD and autism symptoms. The trial court was not persuaded by Dr. Leite's testimony. The trial court noted that the Dr. Leite did not interview Mother or the Child and relied exclusively on his review of the Child's medical records as the basis for his opinion that relocation would exacerbate the Child's ADHD and autism symptoms. In view of its concern with Dr. Leite's testimony, the trial court focused primarily on the parties' testimony concerning the Child's needs. Mother testified that the Child's "behavior ha[d] reached a level of more consistency[, and that] [h]e ha[d] outgrown things that [he was] struggling with" in the previous months and years. She also testified that the doctors expected the Child's behavior to become even more consistent as he matured. Concerning relocation, Mother testified that she believed the Child would be "scared, nervous, and excited" to relocate. In contrast, Father testified that he believed the Child would be "devastated" to move because "he doesn't handle change well." Despite this testimony, Father admitted that the Child's behavioral issues were indeed improving. In its order, the trial court found that the parties "stated multiple times that the [C]hild [was] not 'special needs' but instead experience[d] behavioral issues, and ha[d] made great progress with those issues." In making this finding, it appears that the trial court implicitly found Mother's testimony concerning the Child's behavioral improvements and the likely effect of relocation to be more credible than Father's. As discussed, *supra*, we defer to the trial court concerning its credibility determinations, including those that are implicit. **Wells**, 9 S.W.3d at 783; *see also* **In re C.M.**, No. E2018-02108-COA-R3-PT, 2019 WL 3812421, at *6 (Tenn. Ct. App. Aug. 14, 2019).

Having addressed the Child's behavioral and emotional needs, the trial court turned to address the likely impact that relocation would have on the Child's educational development. As an initial matter, the trial court found that the Child was of above average intelligence and had been accepted into gifted and talented programs at his current school, Riverwood Elementary. Concerning Riverwood, Mother testified that neither parent wanted the Child to attend the school, but it was the only educational option available at the time. The evidence shows that the parties would have preferred that the Child attend Catholic school, but the preferred Catholic school lacked sufficient resources to support the Child's behavioral needs. Mother testified that if the Child could not attend a Catholic school she would prefer that he attend one of the public schools in the neighboring suburbs, but she could not afford to live in those school districts. Father testified that he was happy with Riverwood and wanted the Child to continue his education there. In addressing the parties' conflicting testimony, the trial court found Mother's testimony more credible because "Father [had] expressed displeasure with [Riverwood] through texts and comments only weeks prior to Mother's petition [for relocation] being filed." Accordingly, the trial court found that Father's approval of the school was "likely [the] result of the litigation before [the trial court]." We again reiterate that appellate courts "will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing

evidence to the contrary." *Wells*, 9 S.W.3d at 783. Here, text messages entered into evidence support the trial court's finding that Father was unhappy with Riverwood as late as October 7, 2019, a few weeks before Mother notified Father of her intent to relocate. Accordingly, there is evidence to support the trial court's finding that Mother's testimony that Father was unhappy with Riverwood was more credible than Father's testimony that he was pleased with the school.

Mother also testified concerning potential schools for the Child in the Houston area. Specifically, Mother testified that if she were allowed to relocate, she would move to Sienna Plantation, a suburb north of Houston, because the neighborhood had a highly-rated school district.[6] Mother testified that, "The schools in that district are between eights and

---

[6] Father argues that the trial court erred in allowing the following testimony from Mother over his objection:

> Mother's Attorney: Have you investigated the schools that [the Child] would attend in [Houston] if the judge would allow you to relocate?
>
> Mother: I have. And one of the reasons –
>
> Father's Attorney: Same objection. No foundation for this testimony. She's not an expert of education.
>
> The trial court: No, but if she's looked at schools I think she can testify as to that. . . . Overruled.
>
> Mother: I have looked at schools. And one of the reasons I looked at Sienna Plantation is because it's a highly-rated school district. The schools in that district are between eights and tens according to GreatSchools, which is the same thing we use here in Memphis.
>
> Mother's Attorney: We'll be talking about this in a second, but how is the school rated that [the Child] attends presently?
>
> Mother: It is a 5 out of 10.
>
> Mother's Attorney: And these schools he'll be going to are eight to ten you said?
>
> Mother: Correct.

We review a trial court's evidentiary rulings under an abuse of discretion standard. *See Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004).

As an initial matter, although Father argues in his appellate brief that the foregoing testimony was hearsay, it is unclear from the transcript what type of objection Father was attempting to lodge at trial. According to the transcript, Father first stated that he was making the "same objection" as his previous objection, which was for hearsay. However, Father then proceeded to argue that there was no foundation for Mother's testimony and that she was "not an expert of education," ostensibly arguing that Mother could not provide expert testimony on educational issues. Regardless of the ground for the objection, it is clear

- 8 -

tens according to GreatSchools," a website that compares and rates schools in the United States based on test scores and other data. Concerning Riverwood's rating, Mother testified that it was rated only a five out of ten. Although Father's testimony confirmed that Riverwood was rated a five out of ten, he argued that this rating did not include the optional program in which the Child was enrolled. Father presented no evidence concerning the Houston schools.

Although there was evidence that the Child struggled with change due to his behavioral issues, the record also demonstrates that these issues have greatly improved with treatment, and that the Child's behavior is stabilizing. The record further shows that neither parent was happy with the Child's education at Riverwood Elementary, that the Child's educational prospects in Memphis were limited, and that he would likely be afforded better educational opportunities in Houston. For the foregoing reasons, we cannot conclude that the trial court abused its discretion in finding that this factor favored relocation.

### *The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.*
### Tenn. Code Ann. § 36-6-108(c)(2)(C)

---

that the trial court did not err in overruling it. Here, the question posed to Mother was whether she had investigated schools in the Houston area that the Child would attend; Mother answered that question in the affirmative, and then Father objected. Mother's testimony affirming that she had investigated the schools was neither expert testimony nor hearsay. *See* Tenn. R. Evid. 702, 801(c). Rather, it was Mother's declaration as to her own actions, i.e., that she had investigated the schools in Houston. Thus, we cannot conclude that the trial court abused its discretion in overruling Father's objection. We note that, in his appellate brief, Father appears to take issue with Mother's subsequent testimony, to-wit: "one of the reasons I looked at Sienna Plantation [was] because it's a highly-rated school district." Indeed, Father argues that the trial court relied on this allegedly inadmissible testimony when it found that "the schools available to [the [C]hild] [in Houston] would be high[-]ranking and beneficial to the [C]hild." Notably, Father failed to renew his objection to *this portion* of Mother's testimony. As we have explained before,

> [o]bjections to the introduction of evidence must be timely and specific. They must be made contemporaneously with the objectionable testimony, and they must state the specific ground on which they are based. Therefore, they cannot be raised for the first time on appeal.

*Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 702 (Tenn. Ct. App. 1999) (internal citations omitted). Father's failure to object to Mother's subsequent testimony constituted his waiver of any error concerning this portion of her testimony. *See Ray v. Richards*, No. M2000-01808-COA-R3-CV, 2001 WL 799756, at *5 (Tenn. Ct. App. July 17, 2001) ("This Court is of the opinion that Plaintiff's failure to renew his objection constituted a waiver of any error by the court . . . ."); *State ex rel. Com'r of Dep't of Transp., For & On Behalf of Said Dep't v. Rummage*, No. 01A01-9011CV00402, 1991 WL 122885, at *5 (Tenn. Ct. App. July 10, 1991).

Regarding this factor, the trial court found:

> Relocation to Houston, TX from Memphis, TN is no small trip. The [c]ourt heard testimony that the trip is a short flight on Southwest Airlines[.] The [c]ourt did not hear testimony regarding the time to get to the airport, and a firm plan for traveling with the [C]hild. There was testimony from Mother that she hoped that she and Father could work together to find a way to make that work. Mother also proposed larger blocks of time with Father. Mother seeks to move to Houston for a greater financial position, but the Court cannot see that Father will be able to maintain the same relationship that he now has with the [C]hild upon a move over 500 miles away from his current home. This factor weighs in favor of Father's opposition to relocation.

There was little proof offered at the hearing concerning the logistics of how Father and the Child would maintain a long-distance relationship. Mother testified that there were direct flights every day between Memphis and Houston, and that the flights were under two hours. She also testified that she was willing to give Father most, if not all, holidays with the Child so that Father and the Child could have longer periods of time together. Despite this testimony, the trial court found that Father and the Child would be unable to maintain the same relationship they had prior to relocation. As discussed further, *infra*, it is axiomatic that the Child's relocation to a city hundreds of miles away from Father would alter the nature of the Child's relationship with Father. While Father would certainly be able to continue to foster his relationship with the Child at a distance, if Mother is allowed to relocate, it simply would not be possible for Father and the Child to maintain the type of relationship they now enjoy in Memphis. Accordingly, the trial court did not abuse its discretion in finding that this factor favored Father's opposition to relocation.

***The child's preference, if the child is twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children.***
**Tenn. Code Ann. § 36-6-108(c)(2)(D)**

The trial court did not consider the Child's preference because he was under 12 years of age at the time of the hearing. As such, we turn to the next factor.

***Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the non-relocating parent.***
**Tenn. Code Ann. § 36-6-108(c)(2)(E)**

The trial court found that there was little evidence presented concerning this factor, but it ultimately concluded that neither party attempted to thwart the other's relationship with the Child. Turning to the record, both parties testified that it was important for the other parent to be involved in the Child's life, and the trial court found this testimony

- 10 -

credible. However, Father called Chris Jenkins, Mother's ex-fiancé, as a witness to testify to Mother's alleged statements that she desired to move to keep the Child away from Father. Turning to the transcript, Mr. Jenkins testified that Mother commented that she "felt like if [Father] moved that he would not have any interaction with [the Child], that he would drop out of the picture." On this Court's review, this was the only testimony elicited related to Mother's alleged attempt to thwart Father's relationship with the Child. Contrary to Mr. Jenkins' testimony, Mother testified that, although she had considered employment in Charleston, South Carolina, Weston, Florida, and San Antonio, Texas, she never pursued these opportunities because travel to these locations from Memphis was inconvenient and expensive. Indeed, Mother testified that she would only move to a new city if Father and the Child could easily travel to see each other for visits because it was very important for the Child "to have [Father] in his life."

The trial court found Mother's testimony credible and placed "little to no weight" on Mr. Jenkins' testimony. As discussed, *supra*, because the trial court is able to observe witnesses as they testify and assess their demeanor, the trial court is best suited to evaluate witness credibility. *Wells*, 9 S.W.3d at 783. Accordingly, we give considerable deference to the trial court's determination to give "little to no weight" to Mr. Jenkins' testimony and to find Mother's testimony credible. *See Richards*, 70 S.W.3d at 733. Based on the foregoing evidence, we cannot conclude the trial court abused its discretion with regard to this factor.

### *Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity.*
### Tenn. Code Ann. § 36-6-108(c)(2)(F)

With regard to this factor, the trial court found:

Mother testified in detail as to the financial benefit to her, and thus [the Child], of this move[.] Much discussion was had by the attorneys as to the cost of living difference in Houston as opposed to Memphis, but other than an unresponsive answer by Mr. Jenkins, the Court heard no persuasive testimony that this move would not be of financial benefit. Further, the fact that the child's maternal grandparents will be present and alleviate the need for after care is in itself a great financial benefit. Mother testified that she requests this relocation not only for her benefit but the [C]hild's, and that in bettering herself, she will be better able to provide for [the Child]. The [c]ourt finds that this factor weighs in favor of Mother's request [for relocation].

The record supports the trial court's findings. Mother testified that relocation would provide a significant financial benefit. Specifically, she testified that her income at the

- 11 -

time of the hearing was $81,000.00 per year. As Director of Transplant Financial Services at the Houston Medical Center, Mother's base salary would be $122,000.00 per year with an annual ten percent bonus.[7] Additionally, the Houston job offered a $25,000.00 relocation package and annual merit increases. Accordingly, Mother's first year salary would be $147,000.00 (not including the ten percent bonus), a substantial increase from her salary in Memphis. Further, as discussed, *supra*, the record supports the trial court's finding that the maternal grandmother would provide after school care for the Child, which financially benefits Mother.

Mother also testified concerning the emotional benefits relocation would provide. Specifically, she testified that the Director of Transplant Financial Services position would be her "dream job" and would allow her to return to a field about which she is passionate. Mother testified that she enjoyed previous employment as a transplant manager at Methodist University Hospital in Memphis for four years before being laid off during restructuring. Although transplant operations are her passion, Mother was unable to find another job in that field in Memphis. She testified that, at the time of trial, she was employed as the Director of Development for the University of Tennessee College of Medicine, that her job mainly involved fundraising for student scholarships, and that she had "zero [job] satisfaction" there. Concerning the offer of employment in Houston, Mother testified:

> This is an incredible opportunity because it gives me the opportunity to build
> on what I know and then learn more. They're giving me a chance to learn

---

[7] Father argues that Mother's testimony regarding her compensation package for the Director of Transplant Financial Services position constituted inadmissible hearsay evidence. At trial, Mother was asked "what were the terms [the Houston Medical Center] offered in way of compensation?" Mother began her response with, "They offered me," at which point Father's counsel objected to her testimony as hearsay. The trial court overruled Father's objection, and Mother subsequently testified:

> The offer is [$]122,000 a year. It comes with a $25,000 relocation package. It also comes with a bonus of 10 percent of the base salary. And then it also comes with an annual merit increase.

On review, we conclude that the trial court did not err in admitting the foregoing testimony because it was not hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Where a witness testifies to an objective fact based on that witness' firsthand knowledge of the fact, such testimony does not constitute hearsay. *See* **State v. Kelly**, No. M2001-01054-CCA-R3-CD, 2002 WL 31730874, at *17 (Tenn. Crim. App. Dec. 5, 2002); 31A C.J.S. Evidence § 381. In the disputed testimony, Mother was not relaying an out-of-court statement made by a third party. Rather, she was testifying to objective facts within the scope of her personal knowledge, i.e., the terms of her compensation package (a salary of $122,000.00, a $25,000.00 relocation package, a 10% bonus, and an annual merit increase). Because these statements are based on Mother's personal knowledge of her compensation package, such testimony is not hearsay, and the trial court did not err in overruling Father's objection.

about heart and lung [transplants] and all that, and I've never had exposure to that. So long term for my career, it makes me more robust. It lets me do more in the field of transplant. It lets me apply for higher positions so that my career doesn't stay stagnant.

It is clear from Mother's testimony that relocation would enhance her quality of life both financially and emotionally, but Mother also testified as to how relocation would improve the Child's quality of life. When asked why it would be in the Child's best interest to relocate, Mother testified:

. . . Because no single mom has ever said, I just want to make it and I don't want to have all the resources that my child needs as he progresses in life.

It's my financial responsibility to take care of [the Child], and that's what I'm trying to do. And by moving to Houston, he would have access to better school districts where I can actually afford to live.

And I think that's really important. It's critically important because in my current place in Memphis I can't do that. He has to go to a school that's zoned a five because that's what I can comfortably afford. I have to plan for [the Child]'s future, and that is my job. I need every opportunity to be able to do that. And in Memphis, there is not much that I can do anymore.

Although Mother receives child support from Father, as the primary residential parent, Mother has borne (and would continue to bear) the majority of parenting responsibilities, financial and otherwise. It is obvious that an increase in Mother's income, which would only occur if Mother and the Child relocated, would raise both Mother's and the Child's standard of living and create new opportunities for the Child. Most notably, as the trial court found and as discussed *supra*, the increase in Mother's income would allow Mother and the Child to live in a neighborhood with highly-rated school districts. As such, the Child would be afforded educational opportunities in Houston that are not available in Memphis. This fact alone demonstrates that relocation would enhance the Child's "general quality of life." Tenn. Code Ann. § 36-6-108(c)(2)(F). The record supports the trial court's finding that this factor favored relocation.

### *The reasons of each parent for seeking or opposing the relocation.*
### Tenn. Code Ann. § 36-6-108(c)(2)(G)

The trial court made very limited findings concerning this factor, to-wit:

It is obvious to this [c]ourt why Father opposes relocation. The reasons stated are simply put, a change in the relationship as it is[.] Father will not be able to see the [C]hild as often, and not be able to be involved in day to day

activities[.]

This factor weighs in favor of Father's position.

Indeed, the Child's relocation to Houston would dramatically alter Father's visitation with the Child. As the trial court found, Father's reasons for opposing the relocation are obvious—he would be unable to maintain the same level of day-to-day involvement in the Child's life. Although Mother's reasons for relocating are certainly valid, we cannot conclude that the trial court erred in finding that this factor weighed against relocation.

### *Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a).*
### **Tenn. Code Ann. § 36-6-108(c)(2)(H)**

The trial court made only brief findings concerning any additional factors affecting the Child's best interest and noted that "the majority of factors addressed in [its] [o]rder . . . would fall under [a best interest] analysis." Although the trial court affirmed that Father was very involved in the Child's life, it ultimately found that Mother "performed the majority of parenting responsibilities relating to the daily needs of the [C]hild." Accordingly, the trial court found that this factor favored relocation. For many of the foregoing reasons, this finding is supported by the record and bolsters the trial court's finding that relocation is in the Child's best interest.

As the trial court stated in its order, "[a] decision whether . . . to allow a move for a parent with a child over objection of the other [parent] is a difficult task." Ultimately, the trial court found that relocation is in the Child's best interest. On appeal, we are prevented from second guessing the trial court's decision to allow relocation unless we conclude the trial court abused its discretion. *See Dungey*, 2020 WL 5666906, at *2; *Schaeffer*, 2019 WL 6824903, at *4. Here, the trial court methodically analyzed each relocation factor against the evidence. The evidence demonstrates that relocation will provide the Child with an increased standard of living, better educational opportunities than what he would have in Memphis, and the additional support of his maternal grandparents. Although the trial court noted that the Child's relocation to Houston would undoubtedly alter the nature of the Child's relationship with Father, the evidence shows that the two would still be able to foster a meaningful relationship, albeit from different cities. This Court does not doubt Father's unwavering commitment to the Child, but based on the trial court's order and the entire record, we cannot conclude that the trial court abused its discretion in finding that relocation is in the Child's best interest.

### V. Conclusion

For the foregoing reasons, we affirm the trial court's final order. The case is remanded for such further proceedings as are necessary and consistent with this opinion.

Costs of the appeal are assessed to the Appellant, Jimmy Franklin, for all of which execution may issue if necessary.


                            <u>   s/ Kenny Armstrong            </u>
KENNY ARMSTRONG, JUDGE