IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2024 Session

**ALEXIS DANIELLE RAPP v. CHRISTOPHER GEORGE RAPP**

**Appeal from the Circuit Court for Robertson County**
**No. 74CC5-2019-CV-190      Kathryn Wall Olita, Judge**

_____

**No. M2023-01671-COA-R3-CV**

_____

This case stems from a mother's request to relocate outside the state with the parties' minor child. The father filed a petition opposing relocation, and a trial was held on the matter. The trial court determined that allowing relocation was not in the child's best interests and granted the father's petition. Concluding that the trial court did not abuse its discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which KENNY W. ARMSTRONG and JEFFREY USMAN, JJ., joined.

Joseph Y. Longmire, Jr., Hendersonville, Tennessee, for the appellant, Alexis Danielle Rapp.

John Everett Roach, Springfield, Tennessee, for the appellee, Christopher George Rapp.

**OPINION**

FACTUAL AND PROCEDURAL HISTORY

Alexis Rapp ("Mother") and Christopher Rapp ("Father") were married but divorced in June 2020. One child, Daniel ("the child") was born of the marriage. Father also has one adolescent child, Presleigh[1] ("Sister"), from a previous marriage. During the divorce proceedings, the trial court entered a permanent parenting plan ("the 2020 plan") that named Mother as Daniel's primary residential parent and gave her 249 days of parenting time. The 2020 plan also named Father the alternate residential parent for Daniel

_____
[1] "Presleigh" is spelled in various ways throughout the proceedings. We take our spelling from the parties' briefs.

and gave him 116 days of parenting time. With minor deviations by the parties, this arrangement remained in place throughout the proceedings.

In a letter dated March 23, 2023, Mother informed Father of her intent to relocate with the child to the state of Washington and that she intended to move as soon as September 1, 2023. Mother based this decision on her desire for more familial support, assistance with the child's care, and what she classified as a better job market. In response, on April 5, 2023, Father filed a petition in opposition to Mother's relocation and to modify the 2020 plan should Mother relocate without the child. Father alleged in this petition that relocation would not be in the child's best interests. Mother filed an answer to Father's petition, a counter-petition for permission to relocate, and for contempt. Mother asserted that relocation would be in the child's best interests and that Father was in arrears for child support, medical expenses, and childcare costs. The parties engaged in mediation but could not resolve any issues.

Prior to the trial, Mother submitted a proposed parenting plan ("proposed plan"), which reflected the change in parenting time required if Mother were to move to Washington. The proposed plan allotted Mother 273.5 days and Father 91.5 days. Mother also informed the court that, if the court denied her petition to relocate, she would not move and would remain in Tennessee. Therefore, Mother asserted, there would be no need to modify the 2020 plan.

The Robertson County Circuit Court held a trial on the competing petitions on October 4, 2023. Father, Mother, the child's paternal grandfather, and maternal grandparents testified regarding the proposed relocation. Father testified regarding his involvement in the child's life and his opinion on how his relationship with the child would be affected by the proposed move. Mother testified regarding her motivations for wanting to relocate and the support networks she believed the child had in Tennessee and Washington. Mother also testified regarding money Father owed her as child support and for his share of the child's medical bills. The child's grandparents all testified as to how often they saw the child and any support they provided to the child's care.

Mother and Father also testified regarding the relationship between the child and Sister. Both reported that the child and Sister had a good relationship for most of the child's life. However, Mother testified that, in 2022, the child began withdrawing from his relationship with Sister and that, in February and March 2023, the child began regressing in his ability to use the restroom properly despite being fully trained. The parties spoke about why the child had started to regress, but neither knew of a reason. On one of Father's parenting days, the child soiled himself at a park, and Father cleaned the child before Mother picked him up. Mother discovered the child had soiled himself again an hour and a half later. Mother was still trying to understand why the child was regressing, so she asked the child if anyone had touched him inappropriately. The child responded that Sister had touched him and that he had told her to stop. Mother later followed up with the child

regarding his statements and asked the child where Sister had touched him. The child responded by motioning toward his buttocks and saying, "In the middle." The child reported that Sister's touching scared him and made him feel as though he needed to use the restroom.

Mother testified that she was concerned by the child's disclosure and by previous age-inappropriate sexual behavior Sister had exhibited several years prior. Mother spoke to Father, who reported that the child had not told him of any issues between the children. After speaking to the child's pediatrician, Mother contacted the Tennessee Department of Children's Services ("the Department" or "DCS"). The Department interviewed the child, after which it found the allegations to be unsubstantiated and recommended play therapy for the child. At the trial, Father testified that he was suspicious of the timing of the DCS referral because it came after he had filed the petition in opposition to the relocation. Father testified that he did not believe the allegations and had never seen or been told anything related to the allegations. Father said that he believed Mother was not making up the allegations but that she had misinterpreted the child's statements.

After the close of proof, the court ruled that Father was not in contempt but was behind in payments to Mother. The court, therefore, awarded Mother a judgment for child support payments and medical bills but took the relocation matter under advisement. On October 31, 2023, the court entered a memorandum opinion and order making factual findings and conclusions of law and granting Father's petition in opposition to the relocation. The court found that, under the factors laid out in Tenn. Code Ann. § 36-6-108(c)(2), the relocation was not in the child's best interest, and none of the factors weighed in favor of relocation.

Mother timely appealed and presents two issues for review: (1) whether the trial court abused its discretion when it denied Mother's request to relocate, and (2) whether this Court should award Mother her attorney's fees incurred at trial and on appeal. Father presents an additional issue: whether he is entitled to his attorney's fees incurred on appeal.

STANDARD OF REVIEW

Following a bench trial, we review the court's findings of fact de novo upon the record with a presumption of correctness unless the evidence preponderates otherwise. *Regions Bank v. Thomas*, 532 S.W.3d 330, 336 (Tenn. 2017). We review the court's findings on questions of law de novo with no such presumption. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

"'[C]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility' during the proceedings." *Schaeffer v. Patterson*, No. W2018-02097-COA-R3-JV, 2019 WL 6824903, at *4 (Tenn. Ct. App. Dec. 13, 2019) (quoting *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Thus, when a

trial court's factual determinations are based on its assessment of witness credibility, the court's decision is afforded considerable deference, and this Court will not second-guess the court's decision absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). As for a trial court's credibility determinations, we will not overturn the court's assessment absent "clear and convincing evidence to the contrary." *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

ANALYSIS

If a petition opposing relocation is filed, Tenn. Code Ann. § 36-6-108(c)(1) requires a court to determine whether relocation is in the child's best interest. Tennessee Code Annotated section 36-6-108(c)(2) provides eight factors a court must consider in determining whether relocation is in the child's best interest. Thus, we must determine whether the trial court erred in determining that relocation was not in the child's best interests.

Under the first factor, Factor A, a court shall consider "[t]he nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life." Tenn. Code Ann. § 36-6-108(c)(2)(A). The trial court found that the child has "strong, valuable, close and bonded relationships" with both parents and that both have been involved in the child's life. The court went on to find that Father had helped Mother when she had requested it and that the parents co-parented well, which resulted in the child having strong relationships with both parents. The court cited Father's testimony that he had previously coached the child's tee-ball team and would be unable to do this if the child relocated. The court concluded by finding that this factor did not favor relocation.

Mother asserts that the court erred when it overemphasized Father's involvement in the child's life. We must respectfully disagree. Testimony given at trial by both Mother and Father established that the child had close relationships with his parents. Mother cites her role as the child's primary caregiver, a fact that is undisputed, in support of her assertion that this factor weighed in favor of relocation.[2] This does not, however, necessitate a

---

[2] Mother asserts that this case is factually similar to the case *Franklin v. Franklin*, No. W2020-00285-COA-R3-CV, 2021 WL 5500722, at \*4 (Tenn. Ct. App. Nov. 24, 2021), in which we affirmed the trial court's analysis of Factor A citing the mother as being the primary caregiver and being close with the child's maternal grandparents. Mother asserts that the factual similarities to her case should lead us to reverse the trial court's decision. We are mindful that each case is unique and the trial court's decision "necessarily hinge[d] on 'the particular facts of each case.'" *Schaeffer*, 2019 WL 6824903, at \*4 (quoting *Johnson*, 165 S.W.3d at 645). Therefore, we decline to find an abuse of discretion based solely on factual similarities to this case.

finding that this factor favors relocation. The court was required to consider the child's relationship with *both* parents. *See* Tenn. Code Ann. § 36-6-108(c)(2)(A) ("the child's relationship with the parent proposing relocation and with the nonrelocating parent"). The court found that Father had a caring relationship with the child that would be lost if relocation were granted. The evidence in the record does not preponderate against this finding.

The court credited Father's testimony that he valued being close to the child so he could provide care whenever needed. Mother asserts that this was an error because Father does not help as often as the court found. She points to several weeks during the COVID-19 pandemic when Father did not assist in the care of the child at all to show that the court overstated Father's involvement in the child's life. Father testified, however, that he could not care for the child during this period because his father was receiving cancer treatment, and he wanted to limit possible exposure to the virus. Furthermore, Mother testified that, when she injured herself, Father assisted with caring for the minor child outside of his allotted parenting time. Thus, the testimony from both parents supported the court's finding.

Regarding the child's relationships with other significant persons, Mother asserts that the trial court did not properly consider the child's relationship with the maternal grandparents. In particular, she contends that the child has a closer relationship with the maternal grandparents than with the paternal grandparents, meaning that this factor should weigh in favor of relocation. We must again disagree. Testimony at trial established that the child regularly sees both sets of grandparents. To support her assertion that the child has a closer relationship with his maternal grandparents, Mother asserts that the child sees them more days out of the year despite them living in Washington. However, evidence given at trial also established that the child sees his paternal grandparents almost every other week throughout the year. The evidence, therefore, does not preponderate against the trial court's finding.

Mother asserts next that the court erred by failing to consider the child's relationship with Sister. The evidence regarding Sister's alleged abuse and her relationship with the child consisted of testimony from Mother and Father and the report from DCS following its interview with the child. Based on this evidence, the court found that it had not been established that Sister had abused the child. Mother asserts that the proof offered at trial established that Sister had, in fact, abused the child. However, the court heard the testimony, considered the DCS report, and implicitly assessed the witnesses' credibility in reaching its decision regarding the alleged abuse. We do not find clear and convincing evidence to contradict the trial court's implicit credibility assessments, and the evidence does not otherwise preponderate against the court's findings. We do not seek to diminish or cast doubt on Mother's concern for the child or her intentions regarding reporting her concerns to DCS. However, testimony regarding the children's relationship indicates that they have historically had a loving and appropriate sibling relationship, though this

relationship has become strained recently, with the child reporting that Sister "has become mean." As such, we agree with the trial court that this factor weighed against relocation.

The next factor, Factor B, requires a court to consider "the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child[.]" Tenn. Code Ann. § 36-6-108(c)(2)(B). The trial court found that the child was "a happy, well-adjusted 4-year-old little boy" who attended an excellent school and had benefited from the consistent presence and involvement of both of his parents. Therefore, the court found that this factor did not favor relocation.

Mother asserts that the increase in earnings and free time her job in Washington would provide would positively impact the child's development. The evidence established that the job in Washington would afford Mother more time with the child. This does not, however, negate the court's finding that the child benefited from the presence of both of his parents and that maintaining the current parenting schedule served the child's best interests. We agree that the increase in time with Mother would not outweigh the effect the decrease in the frequency of seeing Father would have on the child's best interests.

Mother similarly cites the decrease in the time the child would spend in daycare as evidence of a positive impact on the child. The court did not place much emphasis on this benefit to the child because testimony established that, based on the timing of the relocation, this benefit would only have been present for several months before the child entered kindergarten, and time spent in daycare would become irrelevant. Similarly, when we consider the effect relocation would have on the child's educational development, testimony at trial established that both parents believed that the school the child attended in Tennessee and the school Mother hoped to have him attend in Washington were good schools. As the child would attend quality schools in Tennessee or Washington, the court did not err in concluding that relocation would not benefit the child's educational development.

The third factor considers "[t]he feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties." *Id.* § 36-6-108(c)(2)(C). The court found that preserving the relationship between the child and Father was not feasible due to the distance the proposed relocation would place between Father and the child. The trial court found that because the child and Father would be over 2,000 miles apart, the relationship would need to be maintained through phone and video calls. The court noted Mother's testimony that, because of his age, the child struggled to maintain conversations over the phone. The court also considered the extensive travel required for the child to visit Father in Tennessee and found that, because of the distance, Father would be unable to maintain the same relationship with the child and that this factor did not favor relocation.

Mother testified that, when she attempted to have conversations over the phone with the child, it was difficult to maintain communication because the child was too young to remain engaged. Mother asserts, however, that the court focused too heavily on the child's ability to have conversations over the phone because whether the child can maintain a phone conversation with Father is irrelevant as Father does not talk to the child over the phone. This argument overlooks that Father currently sees the child in person regularly and, therefore, does not require phone conversations to interact with the child.

When the court compared the 2020 plan with the proposed plan, it found that the child would see Father fewer days during the year under the proposed plan. Father would also have his days grouped into more prolonged blocks instead of the current arrangement where he sees the child regularly throughout the year. In her brief, Mother speculates that the extended periods provided for in the proposed plan may allow Father to foster a deeper relationship with the child. Such speculation fails to show that the evidence preponderates against the court's finding.

Testimony at trial also supports the court's conclusion that travel would be a heavy burden on the child. Mother testified that there were no direct flights between Nashville and the Tri-Cities area of Washington, meaning the child would be required to take two flights each way with a layover between the flights. The child would also be required to travel to and from the airports, wait for each flight, and be subject to potential delays and cancellations. Under the proposed plan, the child would be required to make the roundtrip journey nine times a year, totaling at least eighteen flights yearly. We agree that this would be a difficult journey for a young child to make with such regularity. The court also considered the cost of travel, which Mother testified she would pay alone if Father did not contribute and found that the cost of travel for both the child and a traveling companion would diminish the increase in Mother's earnings. We agree that this factor does not favor relocation because the burden travel would place on the child would not be in his best interests.

Next, under Factor F,[3] courts consider "[w]hether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity." *Id.* § 36-6-108(c)(2)(F). The court found that the increase in Mother's earnings was insignificant compared to the distance between Father and the child. The court noted that it did not hear any testimony regarding the difference in the cost of living between the two areas and that it did not hear any persuasive testimony that the relocation would provide a definite financial benefit to the child. The court also noted that any benefits to the child resulting

---

[3] The court did not find Factors D (the child's preference if older than twelve years of age) or E (whether there is an established pattern of conduct of the relocating parent to promote or thwart the relationship between the child and nonrelocating parent) applicable. We agree and, therefore, will not include these factors in our analysis.

from spending less time in daycare would be temporary and that no persuasive evidence was presented regarding an educational benefit to the child resulting from the relocation. The court concluded by stating that it understood that the child's maternal grandparents would enjoy seeing their daughter and grandchild more but that they already made significant efforts to see and bond with the child. Therefore, the court found that this factor did not favor relocation.

Mother asserts that she and the child would benefit financially from the relocation. It may be true that Mother would see a nominal increase in her salary after relocating, but the record does not contain any definitive evidence concerning what impact this increase would have as no evidence was presented regarding cost-of-living differences between the two areas or the expected cost of traveling between the two areas so frequently. Mother also asserts that the decrease in the cost of daycare would provide her with a financial benefit. We cannot agree with this speculation as no evidence was presented regarding the cost of daycare in Washington. Moreover, any financial benefit from the child spending less time in daycare would be temporary at best before the child would attend a private elementary school. No evidence of the difference in costs of attendance for the two schools was introduced at trial. The evidence, therefore, does not refute the court's findings.

Similarly, Mother asserts that relocating will have a positive emotional impact on her and the child. Mother primarily bases this assertion on being closer to her family and the child spending more time with Mother because of her different work schedule. Although we do not doubt that being close to her family would have a positive impact on Mother, we do not find sufficient evidence in the record to overturn the court's finding that the positive impact on the child would be outweighed by the negative impact resulting from the distance between the child and Father. Mother testified that she did not believe the relationship between her family and the child was more important than the child's relationship with Father or his family. We are cognizant that we must keep the child's best interests of paramount concern, *Johnson*, 165 S.W.3d at 645, and agree with the court that the detriment to the child outweighs the benefit.

As to Mother's argument that her new work schedule would provide emotional benefits to the child from increased time spent together, we agree that the testimony established that Mother's new work schedule would provide significantly more time together for her and the child and provide a better work-life balance. In light of the trial court's other factual findings regarding this factor, we conclude that the evidence does not preponderate against the court's findings.

Factor G directs courts to consider "[t]he reasons of each parent for seeking or opposing the relocation[.]" Tenn. Code Ann. § 36-6-108(c)(2)(G). Regarding this factor, the court found that Mother's reasons for relocating were better financial opportunities, eliminating the need for daycare, and being closer to her family. The court then stated that "family is at the heart of Mother's request." The court went on to find that, although Mother

may not have a strong support system in Tennessee, the child did, and that Mother's desire to be closer to her family did not outweigh Father's opposition to the relocation. As for Father's basis for opposing relocation, the court found that he based his opposition on his belief that his relationship with the child would be drastically altered because his parenting time would become much less frequent and because he would be separated from the child. Therefore, the court found that this factor did not favor relocation.

Mother argues that her reasons for moving were rational, an assertion with which we do not disagree. It appears that the court also did not disagree with this assertion. Instead, it found that Father's reasons for opposing relocation outweighed Mother's reasons in support of relocation, such that it would not be in the child's best interest to allow a move. Mother's argument appears to be that the court erred in finding that the child had a strong support network in Tennessee. After reviewing all the testimony regarding the child's relationships in Tennessee, we find that the evidence supports the court's findings. Testimony showed that the child has a support network in Tennessee that is comprised of Father and his extended family. The evidence does not preponderate against the court's finding.

Finally, Mother asserts that the court erred in its assessment of Factor H, which directs courts to consider "[a]ny other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a)." *Id.* § 36-6-108(c)(2)(H). Tennessee Code Annotated section 36-6-106(a) sets forth the factors courts consider when making a custody determination regarding a minor child. *Key v. Gonzales*, No. W2021-01465-COA-R3-CV, 2024 WL 416350, at *10 (Tenn. Ct. App. Feb. 5, 2024). Mother's argument regarding this factor is two-fold. First, she argues that the court erred in its analysis of factor 11. Second, she contends that the court erred by failing to consider (a)(8) and (a)(9). We will discuss each argument in turn.

In the final order, the court stated that it had considered factor 11, saying:

> The Court has considered factor 11 of the best interest factors as it relates to the allegations Mother has made against Preslea. Having heard all the evidence and reviewed the DCS file and interview, it has not been established by a preponderance of the evidence that Danny was the victim of any abuse at the hands of his sister or any other person.

Factor 11, as found in Tenn. Code Ann. § 36-6-106(a)(11), allows courts to consider "[e]vidence of physical or emotional abuse to the child . . . [.]" Mother takes issue with the court applying an incorrect evidentiary standard to the statute and finding that abuse had not been established by a preponderance of the evidence. Mother asserts that the statute does not specify the evidentiary standard to be met.[4] This Court has interpreted a previous

---

[4] We note that the statute has undergone several revisions and that for several years, this statute did

version of the statute which directed courts to consider "[e]vidence of physical or emotional abuse to the child." *Gaskill v. Gaskill*, 936 S.W.2d 626, 632 (Tenn. Ct. App. 1996) (quoting Tenn. Code Ann. § 36-6-108(8) (Supp. 1995)). The court found that this factor does not "requir[e] the trial court to first find that child abuse has occurred," but rather "simply allows the court to consider evidence of abuse in devising a custody arrangement that will be in the child's best interests." *Id.*

The evidence before the court on this issue consisted of testimony from Mother and Father and the DCS report. We can infer from the court's decision that it credited Father's testimony over Mother's regarding the abuse allegations. The record does not contain clear and convincing evidence contradicting the court's credibility assessment. *See Morrison*, 338 S.W.3d at 426. Similarly, nothing in the court's order indicates that it was concerned about the child's safety when residing with Father. The court also reviewed the finding of DCS that the abuse allegation was unsubstantiated. The court was "simply allow[ed] to consider evidence of abuse," *Gaskill*, 936 S.W.2d at 632, an analysis the court undertook. Therefore, we discern no error.

We turn next to Mother's argument that the court should have considered Factors 8 and 9 as found in Tenn. Code Ann. § 36-6-106. For the reasons given below, we disagree that the failure to consider these factors constituted an abuse of discretion. Factor 8 concerns "[t]he moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child." Tenn. Code Ann. § 36-6-106(a)(8). Mother asserts that the court should have considered Father's fitness as it relates to parenting in light of his response to the alleged touching by Sister. Mother testified that Father did not "seem concerned," and then refused to communicate with Mother regarding the DCS investigation. Mother primarily relies on Father's reaction to the allegations of abuse to support her argument that Father is morally and emotionally unfit to parent the child. We cannot agree that Father is unfit to parent, an opinion that Mother shared until recently as the parents successfully co-parented for several years prior to the allegation. Mother asserts that Father's actions regarding the abuse allegation show "serious and concerning issues with Father's moral and emotional fitness to appropriately parent" the child. The trial court was able to observe the testimony of both parents and determined that the allegations were unsupported and that the child had a healthy relationship with Father. The court also found that Mother had never expressed any concerns to Father about his parenting.

Mother similarly asserts that the court erred by not considering Factor 9 as found in Tennessee Code Annotated section 36-6-106(a)(9), which states: "[t]he child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other

include the preponderance of the evidence standard with regard to this factor. *See* Tenn. Code Ann. § 36-6-106(a)(8) (2005). However, the Tennessee General Assembly removed this language in 2014. *See* 2014 TENN. PUBLIC ACTS, chapter 617, section 4, effective July 1, 2014.

significant activities[.]" Mother's argument is that the court should have considered the child's relationship with Sister. However, in its analysis regarding another factor, the court did consider the child's relationship with Sister and found that "Father testified that [Sister] and [the child] have a loving, positive relationship." Testimony by both parents established that the child and Sister historically have had a close relationship. Mother testified that she had noticed the child distance himself from Sister. For his part, Father testified that he had not noticed any strain in the children's relationship. Though the court did not specifically state that it considered this factor, the court did consider similar evidence under the relocation statute's factors, including the child's relationships with Sister, all the child's grandparents, the child's physical surroundings, the school he attends, and his extracurricular activities such as tee-ball. Therefore, we find no error.

Mother concludes her argument by stating that the child's best interests should outweigh the need for Father's maximum participation in the child's life, an assertion with which we agree. While we may have reached a different decision from the trial court, it is not the place of appellate courts to substitute our judgment for that of the trial court. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). For the reasons stated above, we find that the court based its determination on the child's best interests and did not abuse its discretion. Therefore, Mother has not shown that the trial court's factual findings regarding the child's best interest under Tenn. Code Ann. § 36-6-108(c)(2) are unsupported by the record on appeal. Further, she has failed to show an abuse of the court's discretion in its overall finding that the factors weighed in favor of allowing relocation.

Mother requests her attorney's fees incurred at trial and on appeal. As she was not the prevailing party at either stage of this proceeding, we decline to award Mother her attorney's fees. Father requests his attorney's fees incurred on appeal. This Court exercises its discretion not to award Father his attorney's fees either.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Alexis Danielle Rapp, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE